Edward James FITZGERALD and J.D.L. Corporation, f/d/b/a Captain Hook's, Plaintiffs-Appellees,

v.

Fred N. EDELEN, Defendant-Appellant,

and

Weaver Construction Company, Defendant-Appellant and Intervenor's Appellee,

and

James P. Letourneau, Diana M. Letourneau and Denver Real Estate Company, Defendants,

and

Apollo Stereo Music Co., Inc., a Colorado Corporation, and National Cigarette Service Company, Inc., a Colorado Corporation, Intervenors,

and

Salem Investment Company, a Colorado Corporation, Intervenor-Appellant.

No. 77–845.

Colorado Court of Appeals, Div. III.

Aug. 14, 1980.

Rehearing Denied Aug. 28 and Sept. 18, 1980.

Certiorari Denied Jan. 26, 1981.

Anderson, Calder & Lembke, P. C., Grant A. Anderson, Aurora, for plaintiffs-appellees.

Henry, Norton & Pickens, Bernard P. O'Kane, Thomas H. Pickens, Lakewood, for defendant-appellant.

Miller & Leher, Robert C. Leher, Littleton, for defendant-appellant and intervenor's appellee.

Bohm, Connell & McLellan, Robert Mendel, Lakewood, for intervenor-appellant.

BERMAN, Judge.

Defendant Edelen and defendant Weaver Construction Company appeal from the judgment of the trial court awarding damages against them to plaintiff Fitzgerald. Intervenor Salem Investment Company (Salem) appeals from the judgment of the trial court dismissing its claim against Weaver Construction. We affirm.

The facts of this case are complicated, and the outline we set forth here will be augmented by further recitations in the course of the opinion as is necessary. In the fall of 1972, Fitzgerald engaged Edelen, a real estate salesman employed by Denver Real Estate Company, to assist him in purchasing a restaurant and bar owned by the Letourneaus as sole shareholders of J.D.L., a Colorado corporation. Edelen encouraged Fitzgerald's reliance on him to ascertain that J.D.L. was a "clean" and "solid" corporation.

On December 16, 1972, a meeting was held between Fitzgerald, James Letourneau, and Edelen. Since the building housing the bar was owned by Weaver Construction, its president, Dean Weaver, and its treasurer, Richard DeManche, also attended the meeting. Dean Weaver and Letourneau stated that J.D.L. owed Weaver Construction a "small amount of money," but that Letourneau would take care of it personally. At that time, DeManche and Dean Weaver knew but failed to reveal that J.D.L. was two months in arrears on its payment on a note held by the Colorado

National Bank (C.N.B.), and that J.D.L. was obligated to Weaver Construction for at least $3,000 in back rent, plus a substantial amount attributable to a percentage override on the bar's gross income. The trial court found that these were material facts withheld from Fitzgerald with the intention that he act thereon.

On January 10, 1973, relying on the statements made at the December meeting and Edelen's representations that J.D.L. was "solid," Fitzgerald acquired the bar through the device of purchasing the corporate stock of J.D.L. Thereafter, Fitzgerald entered into a series of contracts with the intervenors regarding the installation and operation of cigarette, amusement, and other coin operated machines. Pursuant to these contracts, Fitzgerald, as president of J.D.L., signed a security agreement and financing statement with one of the intervenors, Salem Investment Co. which agreement Salem subsequently filed with the Colorado Secretary of State.

In May of 1973, Weaver Construction demanded $6,356 from J.D.L. for back rent due prior to the closing. In June of 1973, Fitzgerald learned for the first time that in December 1972 J.D.L. had been two months in arrears in its payments on the C.N.B. note. Fitzgerald unsuccessfully attempted to negotiate with Weaver Construction and with C.N.B., and in July of 1973 he closed the bar.

Weaver Construction then initiated a F.E.D. action in Denver County Court, and locked Fitzgerald out of the building. J.D.L. defaulted on its obligations to Salem, and Salem notified Weaver Construction of its secured collateral. Salem gave Weaver Construction notice of a foreclosure sale on March 6, 1974. It held the foreclosure sale on April 26, 1974, and Salem purchased the collateral at that time. However, Salem did not have possession of the collateral at the time of sale, nor did it ever take possession of the property following the sale. Subsequent to this sale, Weaver Construction sold the building and its contents to third parties.

Fitzgerald instituted this action, and after a trial to the court, the court held that Edelen was negligent in his duty to investigate the financial health of J.D.L. The court found that Weaver Construction had fraudulently misrepresented material facts to Fitzgerald. The court also held that when Letourneau told Dean Weaver at the December 16, 1972, meeting that he would be personally responsible for the "small amount" of money that J.D.L. owed Weaver Construction, this constituted a novation. The court dismissed Salem's claim for damages against Weaver Construction for conversion of the property Salem purchased at the foreclosure sale.

## I. APPEAL OF EDELEN

Edelen first contends that there was insufficient evidence to support a finding of negligence. We disagree.

The trial court found that when Edelen undertook to determine whether J.D.L. was financially "solid," he owed Fitzgerald a duty of care in investigating the financial integrity of J.D.L. Edelen does not contest this conclusion. To comply with this duty, it was crucial that Edelen discover whether J.D.L. was meeting what the court characterized as "important regular monthly obligations to Weaver and the bank ...." The court held that Edelen was negligent in representing J.D.L. as "clean" because he failed to discover that it owed over six thousand dollars to Weaver for back rent, and that it was two months in arrears in payments on the C.N.B. note.

Edelen, however, argues that the evidence was insufficient to support a finding that he breached his duty of care because the corporate debt stemming from the back rent was extinguished by a novation, and the two month arrearage had been paid off by Letourneau, and thus his failure to discover these factors was harmless. This argument misses the gravamen of Fitzgerald's charge that Edelen negligently represented that J.D.L. was a "solid" business. The fact that the outstanding corporate debts were either eliminated or subsequently paid is irrelevant, and does not negate

Edelen's negligence in failing to ascertain that the corporation was failing to meet its "important regular monthly obligations," and in representing to Fitzgerald that the corporation was "solid." This defect in Edelen's investigation together with his erroneous representation to Fitzgerald provide competent evidence to support the trial court's conclusion that Edelen was negligent, and we will not disturb this judgment on appeal. *Block v. Balajty*, 31 Colo.App. 237, 502 P.2d 1117 (1972).

Edelen next contends that, even if one assumes that he was negligent, his negligence was not the proximate cause of Fitzgerald's damages. Again, we disagree.

Edelen again misconstrues the central concept of Fitzgerald's complaint of negligence and damages. Contrary to Edelen's theory that the damages complained of were the two month arrearages in rent and payments on the note, the true damage to Fitzgerald was the *purchase* of the financially unsound corporation. The issue of the proximate cause is generally one of fact to be resolved by the trier of fact. *Ferguson v. Gardner*, 191 Colo. 527, 554 P.2d 293 (1976). Here, the court concluded that: "Fitzgerald would not have purchased the shaky enterprise but for . . . the negligence of Edelen." This finding is supported by the record and will not be disturbed on review. *Broncucia v. McGee*, 173 Colo. 22, 475 P.2d 336 (1970).

We also reject Edelen's contention that Fitzgerald is barred from any recovery because he failed to mitigate his damages. The question of what constitutes reasonable mitigation of damages is a question of fact to be determined by the trier of fact. *Valley Development Co. v. Weeks*, 147 Colo. 591, 364 P.2d 730 (1961). We will not disturb the trial court's findings, which is supported by the record, that Fitzgerald reasonably mitigated his damages by closing the bar. *Broncucia, supra*.

Because we affirm the trial court's judgment that Edelen was negligent on the grounds stated above, we need not address Edelen's contention that Fitzgerald waived his right to review J.D.L.'s books by his participation in the closing. Further, Edelen failed to raise the issues of inappropriate measure of damages and apportionment in his motion for new trial, and thus these issues are improperly before this court and will not be considered on appeal. *Matthews v. Tri-County Water Conservancy District*, Colo., 613 P.2d 889 (No. 79SC83, announced July 7, 1980); *Barker v. Colorado Region-Sports Car Club of America, Inc.*, 35 Colo. App. 73, 532 P.2d 372 (1974); C.R.C.P. 59(f).

## II. APPEAL OF WEAVER CONSTRUCTION

Weaver Construction contends that the trial court erred as a matter of law in finding that it was liable for fraudulent misrepresentation because the facts preclude Fitzgerald from establishing any misrepresentation by it or reliance by Fitzgerald. We do not agree.

Weaver Construction maintains that the trial court erred in holding that the statement made to Fitzgerald that a "small amount" of money was due Weaver Construction from J.D.L. constituted misrepresentation because the court also held that this statement was a novation of the corporate debt. Weaver Construction argues that the court's findings of both misrepresentation and novation based on the same statement are legally and logically inconsistent.

Weaver Construction misconstrues the nature of the misrepresentation. When Weaver Construction, through Dean Weaver and DeManche, stated that a "small amount" of money was due, it, in essence, represented that J.D.L. was meeting its "important regular monthly obligations . . ." The fact that the actual corporate debt was eliminated did not obviate the fraudulent misrepresentation with respect to J.D.L.'s fiscal vitality. As the trial court's finding of misrepresentation is supported by the record, it will not be disturbed on appeal. *Varady v. White*, 42 Colo.App. 389, 595 P.2d 272 (1979).

As to the issue of reliance, Weaver Construction cites a series of cases holding that where an experienced buyer has, and takes, the opportunity to investigate a prospective business, employs an expert to assist him in his purchase, and in fact purchases the business based upon his personal investigation and upon the advice of his expert, there is insufficient evidence to establish the reliance element of fraud. The cases relied on for this proposition include *Greathous v. Jones*, 167 Colo. 406, 447 P.2d 985 (1968); *Cherrington v. Woods*, 132 Colo. 500, 290 P.2d 226 (1955); and *Oldis v. Grosse-Rhode*, 35 Colo.App. 46, 528 P.2d 944 (1974).

■ These cases are factually distinguishable from the cause at bar. In the cited cases, it was held that the plaintiffs did not establish that they had relied upon the representations of the defendants because the plaintiffs conducted personal and expert investigations, and "the means of knowledge [were] at hand and equally available to both parties, and the subject of purchase [was] alike open to their inspections ..." *Cherrington, supra.* Here, neither Fitzgerald nor his expert, Edelen, had access to the books of J.D.L., which were in the possession of Weaver Construction and which it refused to turn over to Fitzgerald until five months after closing. Thus, the means of knowledge were not equally available to both parties. Therefore, the court's finding that Fitzgerald relied upon Weaver Construction's fraudulent representation that J.D.L. owed Weaver Construction only a "small amount" is not governed by this line of cases, and the court's finding of reliance was not in error as a matter of law.

Weaver Construction finally contends that the trial court erred in assessing punitive damages against it as the principal for the tortious acts of its agents. We do not agree.

Weaver Construction cites *Holland Furnace Co. v. Robson*, 157 Colo. 347, 402 P.2d 628 (1965), for the proposition that "the principal cannot be held liable in exemplary damages for the act of an agent, unless it can be shown that it authorized or approved the act for which exemplary damages are claimed; or, that it approved of or participated in the wrong of its agent; or, that it failed to exercise proper care in selecting its servants."

■ The *Holland* court relied on *Restatement (Second) of Agency* § 217C (1958), and, if § 217C was not adopted, in whole, by that opinion, we hereby adopt this section in its entirety.[1] Section 217C provides, in pertinent part:

"Punitive damages can properly be awarded against a master or other principal because of an act by an agent if, but only if ...

·  ·  ·  ·  ·

c) the agent was employed in a managerial capacity and was acting in the scope of employment ..."

Here, as distinguished from *Holland, supra*, where the agents were merely mechanics employed by the principal, the agents concerned in the transaction were the president and treasurer of Weaver Construction Company and were clearly employed in a managerial capacity. Section 7–5–115(1), C.R.S. 1973 (1979 Cum.Supp.). Further, the trial court specifically found that DeManche was at all times acting within the scope of his employment. Under *Holland, supra*, and § 217C, the trial court's finding that the treasurer of Weaver Construction, acting

1. § 217. Where Principal or Agent has Immunity or Privilege

In an action against a principal based on the conduct of a servant in the course of employment:
(a) The principal has a defense if:
(i) he had an immunity from liability to the person harmed, or
(ii) he had a delegable privilege so to act, or
(iii) the agent had a privilege which he properly exercised on his principal's behalf, or
(iv) the agent did not fall below the duty of care owed by the principal to the third person.
(b) The principal has no defense because of the fact that:
(i) he had a non-delegable privilege to do the act, or
(ii) the agent had an immunity from civil liability as to the act.

within the scope of his employment, intentionally made material misrepresentations is sufficient in and of itself to sustain the award of punitive damages, and we need not be concerned, under these circumstances, with whether the president was also acting in the scope of his employment when he misrepresented the financial status of J.D.L.

## III. APPEAL OF INTERVENOR–SALEM

 Salem contends that the trial court erred in failing to award it damages, as an alternative to its prayed-for injunctive relief, for Weaver Construction's conversion of collateral listed in a security agreement entered into between Salem and J.D.L. In its complaint, Salem only requested injunctive relief with respect to the property withheld by Weaver Construction. The court correctly denied this request reasoning that, because Weaver Construction did not have possession of the property in question, the injury had already occurred, and therefore it would be inappropriate to grant injunctive relief. *Blanchard v. Holland*, 106 Colo. 147, 103 P.2d 18 (1940).

In its closing argument, Salem requested that it be awarded damages. However, Salem did not adduce proof of the damages sought with respect to the collateral allegedly converted by Weaver Construction. Therefore, the trial court correctly dismissed the claim because the evidence did not justify an award of damages. *John v. United Advertising, Inc.*, 165 Colo. 193, 439 P.2d 53 (1968). Because we hold that the trial court correctly dismissed this claim on the basis of Salem's failure to prove damages, we need not address Salem's contention that the trial court erred by failing to give effect to its security interest.

Salem's next contention, that the trial court erred in denying its motion to conform the pleadings to the evidence, is without merit. After the conclusion of the trial, Salem moved, pursuant to C.R.C.P. 15(b), to conform its pleadings to the evidence, and to hold Weaver Construction liable under a theory of tortious interference with contract. The court incorrectly stated that the motion to conform "should be denied because it was made after the close of the evidence and Rule 15 does not apply." C.R.C.P. 15(b) specifically states that: "Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, *even after judgment* ..." (emphasis supplied). However, the court also held that: "[T]he parties did not try the case on the theory alleged in the intervenors' motion and the theory was not pled." Our review of the record indicates that this determination was based upon competent facts; hence, we will not disturb the trial court's denial of the motion. *Muhe v. Mitchell*, 166 Colo. 108, 442 P.2d 418 (1968).

Finally, we reject as without merit Salem's last two contentions that the court erred in not awarding damages to J.D.L. and that the court erred in not allowing Salem to contest the unlawful detainer action on behalf of J.D.L.

Judgment affirmed.

PIERCE and RULAND, JJ., concur.