Martin LIST, d/b/a Broadmarket Square,
Plaintiff-Appellee,

v.

Ralph DAHNKE, Individually and d/b/a
Spats; D. L. Hart, Individually and
d/b/a Spats, Defendants-Appellants,

and

Howard Maybury, Individually and d/b/a
Spats; and Spats, Inc., Defendants.

No. 79CA1035.

Colorado Court of Appeals,
Div. I.

Sept. 17, 1981.

Rehearing Denied Oct. 22, 1981.

Allan F. Asher, Paul V. McCarthy, Colorado Springs, for plaintiff-appellee.

Hackethal, McNeill & Aucoin, P. C., Robert D. Kelly, Lakewood, for defendants-appellants.

ENOCH, Chief Judge.

Defendants, Ralph Dahnke and D. L. Hart, appeal a judgment of the trial court awarding plaintiff, Martin List, d/b/a Broadmarket Square, $77,478.28 in damages for defendants' breach of a lease agreement. We affirm.

In April 1977, Dahnke and Hart, with Howard Maybury, entered into a lease agreement with Ceeco Development Corp. for certain building space in the Broadmarket Square Shopping Center, Colorado Springs, Colorado, in which to operate a restaurant. The lease was for a term of seven years and provided that defendants

would neither assign nor sublet the premises without the written consent of the lessor. The lease further provided that such consent was not to be "unreasonably or arbitrarily" withheld. Plaintiff succeeded Ceeco Development Corp. as owner of Broadmarket Square and assumed all rights and obligations under the lease with defendants.

Defendants experienced financial difficulties and vacated the premises in November 1977. Shortly thereafter, defendants sought approval of an assignment of the lease to Pop Chittivej, an experienced restaurateur who planned to open a Thai-American food restaurant at that location. Plaintiff refused to approve the assignment.

In May 1978, plaintiff leased the premises to another party at a lower rental than provided by defendants' lease. Plaintiff then brought this action against defendants for damages occasioned by the breach of the lease agreement. A default judgment was entered against defendant Maybury for $28,285.62.

In a trial to the court, the court determined that plaintiff did not unreasonably withhold his consent to the assignment and, therefore, was entitled to damages.

Defendants first contend that the trial court erred in finding that plaintiff acted reasonably in refusing to approve the assignment of the lease to Chittivej. We disagree.

■ In determining whether there is a breach of a lease provision which requires that consent to an assignment will not be unreasonably or arbitrarily withheld, a landlord is held to the standard of conduct of a reasonably prudent person. *See Oil & Development Co. v. Metropolitan Sanitary Dist.*, 131 Ill.App.2d 527, 266 N.E.2d 405 (1970); *Broad & Branford Place Corp. v. J. J. Hockenjos Co.*, 132 N.J.L. 229, 39 A.2d 80 (1944). *See generally Annot.*, 54 A.L.R.3d 679. Arbitrary considerations of personal taste, convenience, or sensibility are not proper criteria for withholding consent under such a lease provision. *American Book Co v. Yeshiva University Development*

*Foundation, Inc.*, 59 Misc.2d 31, 297 N.Y. S.2d 156 (1969).

■ Here, defendants contend that the assignment of the lease was not approved because of racial reasons, and presented testimony that Hallstein, plaintiff's property manager, made a racial slur against Chittivej. Clearly, landlords have no right to refuse to permit an assignment on purely racial grounds. *Oil & Development Co., supra.* However, Hallstein testified that he had made no racial slur and that his refusal to approve the assignment was because of his belief that a specialty restaurant of the type that Chittivej planned to run would not be successful at that location.

■ Whether a landlord has unreasonably withheld consent to a lease assignment is a question of fact, and an appellate court will not disturb the trial court's findings of fact unless they are so clearly erroneous as not to find support in the record. *See Page v. Clark*, 197 Colo. 306, 592 P.2d 792 (1979). Here, there is evidence to support the trial court's finding that Hallstein did not make the alleged racial slurs. There is also evidence to support the court's finding that Hallstein acted reasonably in withholding his consent to the assignment. Accordingly, those findings will not be disturbed.

Defendants also contend that the judgment assessed by the trial court was excessive. Again, we disagree.

■ The fact alone that the default judgment against defendant Maybury was for only $28,285.62 does not establish that the award of $77,478.28 against the defendants who went to trial was excessive. The judgment of $77,478.28 against defendants Hart and Dahnke is supported by the evidence. It was based on the amount owed for rents not received prior to the occupancy by the new tenant and the difference between the rental rate paid by the new tenant and the rate contracted for by defendants. Defendants stipulated to the bookkeeping methods used to calculate this amount, and we find no error in such calculations. Plaintiff is, of course, not entitled to double recovery

and would be limited in his recovery to not more than $77,478.28 as damages.

Judgment affirmed.

PIERCE and SMITH, JJ., concur.