Fred GORSICH, Estate of Frank Cadwell, Woodrow Cawlfield, Joe Centa d/b/a Centa Dairy Farm, Dave Centa, Dallas Cooper, Donald Cooper, Richard Delong, Arthur Fillmore, Larry Fillmore, Gary Hanagan, Ed Jersin, Klun Farm and Cattle, a Colorado Partnership, Joe Lopresti, Sr., Joe Lopresti, Jr., Frank Nesselhuf, Ray Pieper, Joe Pritekel, Phil Prutch, Tony Thomas, Clyde Wilcox, William H. Sheard, Jr., George Guagliardo, Leon Golden, Edith Johnson, Dale Muth, Roy McCown, Plaintiffs–Appellees and Cross–Appellants,

v.

DOUBLE B TRADING COMPANY, INC., William Bolster, and Klein Brothers, Ltd., Defendants–Appellants and Cross–Appellees.

Nos. 93CA1784, 94CA0162.

Colorado Court of Appeals,
Div. IV.

Nov. 17, 1994.

Rehearing Denied Feb. 2, 1995.

Certiorari Denied May 8, 1995.

Gradisar, Trechter, Ripperger & Groshal, James M. Groshal, Pueblo, Peterson & Fonda, P.C., Kathleen K. Hearn, Pueblo, for plaintiffs-appellees and cross-appellants.

Montgomery, Green, Jarvis, Kolodny & Markusson, P.C., Kevin F. Amatuzio, Robert N. Clark, Denver, for defendants-appellants and cross-appellees Klein Bros., Ltd. and Double B Trading Co., Inc.

Chrisman, Bynum & Johnson, P.C., Robert L. Matthews, F. Christopher Chrisbens, Boulder, for defendant-appellant and cross-appellee William Bolster.

Opinion by Judge ROTHENBERG.

Plaintiffs are twenty-six farmers who suffered serious financial losses after they stored their crops of pinto beans with Boone Bean and Elevator, an agricultural warehouse facility. They brought this action to recover those losses premised on allegations of improper dealings between Boone Bean and defendant Double B Trading Co. and Double B's owners, defendants Klein Brothers, Ltd., and William Bolster. From a judgment entered on a jury verdict in favor of plaintiffs, defendants appeal, and we affirm.

In 1986, Bolster, as president of Double B and on its behalf, entered into an exclusive marketing agreement with Boone Bean, giving Double B a right of first refusal on all beans offered for sale by Boone Bean.

Between 1986 and 1988, defendants engaged in a series of transactions in which Boone Bean sold plaintiffs' beans to Double B without plaintiffs' permission. To cover

Boone Bean's subsequent inventory shortages, Bolster entered into contracts with James Tomlinson, the operator of Boone Bean, so that when Boone Bean was audited by the Department of Agriculture, it appeared that Boone Bean still had plaintiffs' beans. However, beans were never actually shipped and money was not exchanged. Later, Tomlinson and Bolster entered into a new contract in which Tomlinson sold beans back to Bolster, again, without shipping the beans or exchanging money. A transaction of this kind was known as a "washout."

In July 1988, the State Department of Agriculture closed Boone Bean after audits showed that Boone Bean did not have sufficient beans to meet its storage obligations. Boone Bean ultimately filed for bankruptcy. Tomlinson pled guilty to theft of plaintiffs' beans and the court ordered him to pay restitution.

Plaintiffs filed this action against the defendants here plus Boone Bean and Tomlinson seeking compensatory, punitive, and treble damages for negligence, conspiracy, theft, conversion, and violation of the Farm Products Act. Plaintiffs claimed, *inter alia*, that: (1) Tomlinson or Boone Bean was the agent of Double B; (2) Tomlinson and Bolster conspired to steal the beans; (3) Boone Bean and Tomlinson attempted to cover up shortages in the beans by creating documents reflecting fictitious sales of beans; (4) Double B, Bolster, and Klein Brothers assisted Boone Bean in covering up the shortages; (5) Double B, Bolster, and Klein Brothers knew that Boone Bean and Tomlinson had converted the beans owned by plaintiffs for defendants' own use or benefit; (6) Double B knowingly purchased and took possession of the stolen beans; and (7) Double B was the alter ego of Klein Brothers.

At trial to a jury, defendants stipulated that Bolster was acting within the scope and course of his employment as an agent for Double B. At its conclusion, the court entered a default judgment against Tomlinson and he is not a party in this appeal. Similarly, by virtue of its bankruptcy, Boone Bean is no longer a party.

In special verdict forms, the jury found: (1) Bolster was liable for negligence, conver-

sion, theft, and violation of the Farm Products Act, but he had not engaged in civil conspiracy; (2) Double B was the alter ego of Klein Brothers; (3) Tomlinson or Boone Bean was acting as the agent of Double B at all times relevant to plaintiffs' injuries or damages; (4) the Colorado Department of Agriculture, a designated non-party, was negligent and such negligence was a partial cause of plaintiffs' injuries or damages; and (5) the percentage of negligence charged to Tomlinson was 55%, to Bolster 35%, and to the Colorado Department of Agriculture 10%. The jury awarded plaintiffs compensatory and punitive damages.

The parties filed several post-trial motions including a motion for order of judgment on jury verdicts to include treble damages, statutory interest, costs, and attorney fees. The trial court granted plaintiffs' motion awarding costs, attorney fees, and treble damages in lieu of the punitive damages awarded by the jury.

I.

Defendants claim the Farm Products Act does not create a private right of action, but merely establishes licensing requirements and regulates the conduct of farm products dealers, agents, and transporters. Thus, according to defendants, the jury verdict on that claim must be reversed. We disagree.

In support of their contention, defendants rely upon § 12–16–115, C.R.S. (1991 Repl. Vol. 5A) setting forth various types of activities creating unlawful conduct; § 12–16–114.5, C.R.S. (1991 Repl.Vol. 5A), providing for fines determined by the Commissioner of Agriculture that are paid into the General Fund; and § 12–16–116, C.R.S. (1991 Repl. Vol. 5A), providing for civil suits and criminal prosecutions brought by the attorney general or district attorney. None of these statutes expressly provides for a private right of action by plaintiffs. See L & M Enterprises, Inc. v. Golden, 852 P.2d 1337 (Colo.App.1993) (explicit language of statute does not provide a remedy for its violation); Silverstein v. Sisters of Charity, 38 Colo.App. 286, 559 P.2d 716 (1976) (no private right of action existed

for employment discrimination against physically disabled persons where statute provided criminal penalty for violations but did not expressly provide for civil actions for damages).

Here, however, plaintiffs rely upon § 12–16–106(1)(d)(I), C.R.S. (1991 Repl.Vol. 5A), then in effect, which expressly provided that:

> Any producer, owner, or other dealer within the state of Colorado claiming to be injured by the fraud, deceit, willful negligence, or failure to comply with the provisions of this part 1 of any dealer may seek to recover the damages caused by such fraud, deceit, willful negligence, or failure to comply with the provisions of this part 1. If the licensee has elected to file a bond pursuant to this section, the injured party may bring an action, with the prior written consent of the commissioner, for collection against both principal and surety in any court of competent jurisdiction.

It is uncontroverted that plaintiffs are producers and defendants are dealers. *See* § 12–16–103(4)(a), C.R.S. (1991 Repl.Vol. 5A) (defining "dealer") and § 12–16–103(9), C.R.S. (1991 Repl.Vol. 5A) (defining "producer"). Also, plaintiffs' claims arise from defendants' alleged failure to comply with the provisions of the Farm Products Act. Plaintiffs received the written consent of the commissioner and they "seek to recover the damages caused by [defendants'] fraud, deceit, [and] willful negligence. . . ." Thus, under these circumstances, we hold that the Act creates a private right of action. *See Boettcher & Co. v. Munson*, 854 P.2d 199 (Colo.1993) (statute specifies conduct giving rise to civil liability for prospectus fraud and expressly creates a private right of action in favor of defrauded investor).

### II.

■ Defendants next contend the jury verdict finding that Tomlinson or Boone Bean was the agent of Double B Trading is not supported by the evidence. We disagree.

■ Sufficiency of the evidence and inferences and conclusions drawn therefrom must be viewed in the light most favorable to the prevailing party in the trial proceedings.

Such findings will not be disturbed if they are supported by evidence in the record. *Winston Financial Group, Inc. v. Fults Management, Inc.*, 872 P.2d 1356 (Colo.App. 1994).

■ The existence of an agency relationship is ordinarily a question of fact. *Stortroen v. Beneficial Finance Co.*, 736 P.2d 391 (Colo.1987).

■ An agent is generally one who acts for, or in place of, another, or is entrusted with the business of another. And, the existence of an agency relationship turns on the intention of the parties and is evidenced by their acts, not on what the relationship is called. What is critical is that the parties materially agree to enter into a particular relation to which the legal consequences of agency attach even though those consequences might not have been contemplated by the parties at the time of their agreement. *Moses v. Diocese of Colorado*, 863 P.2d 310 (Colo.1993).

■ Although the control a principal exercises over the manner of work performed by an agent is evidence that an agency relation exists, no one factor, including control, is determinative. The most important factor in determining whether a person is an agent is "the right to control, not the fact of control." *Moses v. Diocese of Colorado, supra*, at 324.

Here, there is sufficient evidence in the record to support the jury's finding that Tomlinson or Boone Bean was the agent of Double B. The testimony showed that Bolster, while acting within the scope of his employment and as the president of Double B, approached Tomlinson with an exclusive marketing agreement as a way for Tomlinson to get out of a financial bind; Bolster agreed to help Tomlinson financially and with the marketing of the beans in storage; Bolster prepared contracts for Tomlinson; Bolster advised Tomlinson about expanding his operations; Bolster issued a check directly to a farmer on Tomlinson's behalf; and Bolster assisted Tomlinson in arranging a way to sell plaintiffs' beans in order to cover up shortages in Tomlinson's warehouse and to avoid Boone Bean's closure by the Department of Agriculture.

Viewing this evidence in the light most favorable to plaintiffs, we conclude that it was sufficient for the jury to find Tomlinson or Boone Bean was the agent of Double B Trading.

## III.

■ Defendants also claim the jury verdict finding Double B the alter ego of Klein Brothers is not supported by the evidence. Again, we disagree.

■ Initially, we note that the alter ego doctrine provides an equitable remedy. Here, however, the issues were tried to the jury by consent of the parties, and thus, its verdict has the same effect as if the issue had been triable to the jury as a matter of right. *DiFede v. Mountain States Telephone & Telegraph Co.*, 763 P.2d 298 (Colo.App.1988).

■ To establish the alter ego doctrine it must be shown that the stockholders used the corporate entity as a mere instrumentality for the transaction of their own affairs without regard to separate and independent corporate existence, or for the purpose of defeating or evading important legislative policy, or in order to perpetrate a fraud or wrong on another. *See Micciche v. Billings*, 727 P.2d 367 (Colo.1986). When a party has shown that the alter ego doctrine applies, a court will disregard a corporate entity, or pierce the corporate veil, and consider the actions ostensibly taken by the corporation to be those of the shareholders. *Gude v. City of Lakewood*, 636 P.2d 691 (Colo.1981).

According to the testimony at trial, instead of hiring Bolster as its own employee, Klein Brothers agreed to form Double B so that Bolster would be able to stay in Colorado and would not have to move to California where Klein Brothers was located; when Double B was set up, Klein Brothers provided 90% of the initial capital and owned 90% of the stock; and Double B's officers, with the exception of Bolster, were officers or owners in Klein Brothers.

Also, the evidence showed that Klein Brothers financed the operations of Double B by providing an on-going line of credit secured by Klein Brothers; Klein Brothers paid Bolster's salary when Double B was unable to do so; Double B's employees were covered by Klein Brothers' retirement plan; Klein Brothers paid for the first few loads of beans sold to Double B; Klein Brothers purchased insurance coverage to cover Double B's losses; Klein Brothers processed the insurance claim on behalf of Double B and received the proceeds from the sale of Double B; and when Double B closed, the business continued on as Klein Brothers' business, with Klein Brothers taking over its office, assets, and liabilities.

Thus, there is sufficient evidence in the record to support the jury's finding that Double B was the alter ego of Klein Brothers.

## IV.

■ Defendants next claim there was insufficient evidence to hold Klein Brothers liable for treble damages. We disagree.

At trial, the jury found that Bolster was guilty of negligence, conversion, violating the Farm Products Act, and theft. And, defendants stipulated that Bolster was acting within the scope and course of his employment as president of Double B at all times relevant to the claims at issue here. Thus, Double B was liable for the actions of Bolster. *See Fitzgerald v. Edelen*, 623 P.2d 418 (Colo.App. 1980) (punitive damages were properly awarded against construction company for acts of president committed within scope of his employment).

In addition, the jury found that Klein Brothers was the alter ego of Double B and, as such, Klein Brothers is liable for the damages assessed against Double B. *See Gude v. City of Lakewood, supra* (applying alter ego doctrine to pierce the corporate veil).

## V.

■ Defendants next claim the trial court erred in awarding treble damages under § 18–4–405, C.R.S. (1994 Cum.Supp.) based upon plaintiffs' noneconomic damages. More specifically, defendants argue that the term, "actual damages," as used in the statute, includes only economic damages and, therefore, that plaintiffs are not entitled to recover

three times their non-economic damages. We disagree.

Section 18–4–405 provides:

> All property obtained by theft ... shall be restored to the owner.... The owner may maintain an action not only against the taker ... but also against any person in whose possession he finds the property. In any such action, *the owner may recover ... three times the amount of the actual damages sustained by him* ... and may also recover costs of the action and reasonable attorney fees.... (emphasis added)

"Actual damages" include non-economic damages as well as economic damages. *See Keohane v. Stewart*, 882 P.2d 1293 (Colo. 1994) (in action for slander per se, actual damages may be established by proving harm to reputation, personal humiliation, mental anguish, or physical suffering); *Ervin v. Amoco Oil Co.*, 885 P.2d 246 (Colo.App. 1994) (jury instruction was proper which required jury to award actual damages in an amount that would compensate plaintiff for mental or emotional distress).

At trial, the jury was instructed that, in determining actual damages, it was to consider:

> Any non-economic losses or injuries incurred to the present time or which will probably be incurred in the future, including pain and suffering; inconvenience; emotional distress....

> Any economic losses incurred to the present time....

This instruction tracks the language of *CJI–Civ.3d* 26:4 (1989) which defines "actual damages." Thus, no error occurred.

## VI.

Next, defendants assert that the jury was not properly instructed on the burden of proof to be applied in awarding exemplary damages. We disagree.

Instructions concerning the burden of proof must be considered as a whole. An instruction which is incomplete or ambiguous may be cured by other instructions. *South-*

*erland v. Argonaut Insurance Co.*, 794 P.2d 1102 (Colo.App.1990).

Here, the jury was instructed:

> If you find in favor of Plaintiffs and award them actual damages on any one of the following claims ... then you shall consider whether exemplary damages shall be assessed against one or more of the Defendants. If you find beyond a reasonable doubt that the injury complained of was attended by circumstances of malice or willful and wanton conduct, then in addition to actual damages you may also assess a reasonable sum as exemplary damages.

In a separate instruction the court instructed the jury on the definition of reasonable doubt. Thus, when the instructions are read as a whole, the trial court did not err in instructing the jury on the burden of proof in awarding exemplary damages.

## VII.

Next, defendants attempt to raise a number of issues on appeal, but we conclude that any errors were waived.

Under C.R.C.P. 51, a party must make all objections to a proposed jury instruction before it is submitted to the jury, otherwise its propriety cannot be considered on appeal. And, in general, if errors are not brought to the attention of the trial court, they are deemed waived. *See Martin v. Minnard*, 862 P.2d 1014 (Colo.App.1993).

Although a reviewing court may exercise its discretion and soften this rule when it is necessary to do justice and avoid manifest error, *see Martin v. Minnard, supra,* we conclude that no manifest error occurred here.

### A.

Defendants claim the trial court improperly instructed the jury on an owner's rights in stolen property. However, defendants tendered an almost identical instruction which the court refused. As such, defendants cannot now complain that the instruction given by the court was improper. *See Graves v. Davenport*, 45 Colo. 270, 100 P. 429 (1909) (a party cannot complain on ap-

peal of instruction given at trial when that party has requested a similar instruction).

## B.

■ Similarly, we reject as waived defendants' claim that the trial court erred in imposing joint and several liability for the negligence or fault of defendant Tomlinson and nonparty Department of Agriculture.

Section 13–21–111.5, C.R.S. (1987 Repl.Vol. 6A), the pro rata liability statute, provides:

(1) In an action brought as a result of a death or an injury to person or property, no defendant shall be liable for an amount greater than that represented by the degree or percentage of the negligence or fault attributable to such defendant that produced the claimed injury, death, damage, or loss, except as provided in subsection (4) of this section.

. . . .

(4) Joint liability shall be imposed on two or more persons who consciously conspire and deliberately pursue a common plan or design to commit a tortious act. . . .

At trial, an interrogatory asked the jury to answer the following question:

Taking as 100%, the combined *negligence* of any Defendant or non-party you have find [sic] to be *negligent,* and whose *negligence* was a cause of any of the Plaintiffs [sic] injuries, damages or losses, what percentage of *negligence* do you apportion to each such person or entity. (emphasis added)

The jury apportioned the defendants' negligence as follows: 55% to Tomlinson, 35% to Bolster, and 10% to the Department of Agriculture. In a separate interrogatory, it found that Bolster did not engage in a civil conspiracy.

Defendants take the position that § 13–21–111.5 embraces all tortious conduct, not just negligence. Therefore, defendants contend that the trial court was required to apportion all damages, including those assessed against defendants for conversion, theft, and violation of the Farm Products Act, in the same manner as the jury apportioned the defendants' negligence on the special verdict form

and reduce their liability by the 65% fault attributable to Tomlinson and the Department of Agriculture.

Here, however, defendants did not tender any instructions or special interrogatories asking the jury to apportion liability for the claims other than negligence. And, defendants conceded at oral argument there was no evidence at trial of conversion or theft by the Department of Agriculture that would have warranted apportionment of fault as to those claims.

Therefore, even if we assume, without deciding, that all tortious conduct is included within the provisions of § 13–21–111.5, under the circumstances presented here, the defendants waived any error that may have occurred. *See Moody v. A.G. Edwards & Sons, Inc.,* 847 P.2d 215 (Colo.App.1992) (at defendant's request, trial court instructed the jury it could allocate responsibility for plaintiff's damages between defendant sued for negligence and designated nonparties, who had committed intentional tort; held, trial court did not err in applying § 13–21–111.5 to nonparties).

Thus, the trial court did not err in imposing joint and several liability on defendants.

## C.

■ In light of our finding above that the trial court correctly imposed joint and several liability, we reject defendants' related claim that the treble damages and attorney fees awarded by the trial court also must be apportioned according to the percentages fixed by the jury. *See Lira v. Davis,* 832 P.2d 240 (Colo.1992) (exemplary damages are not subject to reduction by application of the comparative negligence statute).

## D.

■ Similarly, we reject defendants' next claim that the special verdict form contained an error requiring reversal. It stated:

Question: Are the Plaintiffs entitled to punitive damages from the Defendants Bolster, Double B Trading Co., and Klein Bros.? (Yes or No)

Answer: Yes.

According to defendants, this question denied them the right to have their conduct individually assessed. Again, however, their objection is deemed waived because defendants did not object to this verdict form at trial. *See Martin v. Minnard, supra.*

The judgment is affirmed.

STERNBERG, C.J., and CASEBOLT, J., concur.