**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 22, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

BOXER F2, L.P., a Texas limited
partnership,

        Plaintiff - Appellee,

v.

WILLIAM BRONCHICK,

        Defendant - Appellant.

and

FLAMINGO WEST, LTD., doing
business as Legalwiz Publications;
BRONCHICK & ASSOCIATES; and
BRONCHICK & ASSOCIATES, P.C.,

        Defendants.

No. 16-1360
(D.C. No. 1:14-CV-00317-PAB-MJW)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **TYMKOVICH**, Chief Judge, **PHILLIPS**, and **MORITZ**, Circuit Judges.

This case arises from a commercial lease dispute involving Flamingo West,

Ltd., a real estate management and consulting firm, and its landlord, Boxer F2,

---

[*] This order and judgment is not binding precedent except under the doctrines
of law of the case, res judicata and collateral estoppel. It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

L.P. Boxer sued Flamingo West and other persons and entities associated with Flamingo West, including Flamingo West's president, William Bronchick, over their failure to pay completely and timely on leased office space.

Mr. Bronchick challenges multiple rulings by the district court during the course of the bench trial. First, he challenges the district court's imposition of sanctions for failure to cooperate in discovery. He also attacks the sufficiency of Boxer's evidence supporting the court's decision to pierce Flamingo West's corporate veil and hold him personally liable. Finally, he objects to the amount of damages assessed against him on Flamingo West's behalf.

We affirm. The district court did not err in upholding the magistrate judge's discovery sanctions order. Likewise, the record and evidence presented at trial provided an adequate basis for the court to hold Mr. Bronchick liable for Flamingo West's breach of contract. Finally, the district court did not abuse its discretion when it solicited final damages calculations from the parties after trial, nor was it wrong to award damages based on those calculations.

## I. Background

From April 2012 through September 2016, Flamingo West, Ltd. neglected to pay rent on time or in full for office space it was leasing in Aurora, Colorado. Flamingo West's landlord, Boxer F2, L.P., brought this action to recover the unpaid rent and late fees. Though it originally named Flamingo West as the one and only defendant, Boxer soon realized it likely could not obtain full recovery

from Flamingo West's assets. It thus amended its complaint to include Bronchick & Associates and Bronchick & Associates, P.C. as defendants. The lease had once listed Bronchick & Associates as a trade name for Flamingo West, but Boxer alleged that it was a separate entity and a party to the lease. Accordingly, Boxer alleged that Bronchick & Associates had breached the lease as well. As for Bronchick & Associates, P.C., Boxer believed that company had actually occupied a portion of the leased office space and thus unjustly enriched itself at Boxer's expense. Boxer further alleged that Bronchick & Associates, P.C. had assumed responsibility for Bronchick & Associates' breach as its successor.

Finally, Boxer also named William Bronchick as a defendant. Mr. Bronchick played some role in all three of these entities, and had signed the lease in his official capacity as president of Flamingo West. Boxer now alleged that Flamingo West was Mr. Bronchick's corporate alter ego, a vehicle for transacting his personal affairs. Moreover, Boxer accused Mr. Bronchick of deliberately draining Flamingo West's assets to frustrate Boxer's chances of recovering on the broken lease.

Boxer set out to gather evidence of Mr. Bronchick's relationship with Flamingo West through discovery. Mr. Bronchick, however, refused to fully cooperate. This led Boxer to file a motion to compel discovery responses, which the magistrate judge overseeing discovery granted. But in supplementing the discovery responses, the defendants made little effort to expand or clarify them.

The magistrate judge accordingly entered a conditional order of sanctions in February 2015. Mr. Bronchick would have two weeks to divulge the accounting information Boxer sought; if he failed to do so, the magistrate judge made clear that sanctions would be imposed.

Yet again, Mr. Bronchick did not fully cooperate. Several untimely or incomplete productions, another court order, an on-site inspection, and a full evidentiary hearing later, the magistrate judge granted Boxer's request for sanctions.

Mr. Bronchick objected, asking the district court to overturn the sanctions order. But the court summed up Mr. Bronchick's briefing on the objection as offering little more than "unsupported assertions" and "an invitation . . . to parse the record" to make his various arguments for him. Aplt. App. 219. The court thus overruled Mr. Bronchick's objection.

Meanwhile, Boxer moved for summary judgment against Flamingo West on the breach of contract claim. Flamingo West did not oppose the motion, and the court granted it in the amount of $2,428,625. With the breach thus conclusively established, the other defendants' portion of the blame for it would be decided at a three-day bench trial.

At trial, Boxer failed to prove its claims that Mr. Bronchick and Bronchick & Associates were parties to the lease. It also failed to prove the claim it had asserted against Bronchick & Associates, P.C. for unjust enrichment. Finally, it

failed to prove its claims against Mr. Bronchick and Flamingo West for fraudulent transfers. What Boxer *did* prove was that equity required piercing Flamingo West's corporate veil and holding Mr. Bronchick personally accountable for the unpaid rent.

But the district court also found the damages awarded against Flamingo West by default at the summary judgment stage did not accurately reflect the amount of unpaid rent and fees. In light of its own interpretation of the lease, the court decided to solicit new damages calculations for the veil-piercing remedy against Mr. Bronchick. Boxer submitted a new proposal; Mr. Bronchick did not, although he challenged some of Boxer's new calculations. The court found some of Mr. Bronchick's points persuasive, and reduced damages accordingly. In the end, the court rendered judgment against Mr. Bronchick for $720,130.

## II. Analysis

Mr. Bronchick brings five claims of error.[1] The first two relate to the magistrate judge's sanctions order. Mr. Bronchick contends the district court erred by reviewing the order for clear error instead of de novo. And even reviewed de novo, he argues the order should have been overturned. Next, Mr.

---

[1] Mr. Bronchick has also moved for permission to supplement his appendix. We GRANT this motion only because Boxer abandoned any objection to it at oral argument. *See* Oral Arg. at 27:27 ("We don't have any reason to object to a supplemental appendix coming in."). *But see* Appellee Boxer F2, L.P.'s Resp. Appellant's Am. Mot. Leave File Suppl. App. (opposing the motion).

Bronchick challenges the court's decision to pierce the corporate veil and hold him personally liable for Flamingo West's breach of the lease. Finally, Mr. Bronchick asserts that Boxer should only have received nominal damages. He argues Boxer failed to prove damages with sufficient certainty at trial, and that the district court should never have solicited a new damages calculations after the close of evidence.

As we explain in turn, none of these purported errors warrant reversal.

## A. *The District Court's Review of the Sanctions Order*

Mr. Bronchick brings a twofold challenge against the magistrate judge's discovery sanctions order. First, he contends the district court reviewed the order under an overly deferential standard. Second, he asserts the sanctions should not have passed muster even under that standard.

By failing to include his objection to the sanctions order in his appendix, Mr. Bronchick likely has not shown he preserved either of these issues for our review. *See* 10th Cir. R. 10.3(D)(2); *see also Valley Improvement Ass'n, Inc. v. U.S. Fid. & Guar. Corp.*, 129 F.3d 1108, 1119 (10th Cir. 1997). Nevertheless, for the sake of clarity we explain why we find his arguments on appeal unpersuasive.

### 1. *The District Court's Standard of Review*

Federal district courts utilize non–Article III magistrate judges to hear and determine a host of pretrial matters. *See* 28 U.S.C. §§ 631, 636. But the district court presiding over the action reserves the power to review and overturn the

magistrate judge's orders. *See id.* § 636; *see also* Fed. R. Civ. P. 72. Ordinarily, the court will defer to the magistrate judge on nondispositive matters unless the order is "clearly erroneous or contrary to law." *Id.* at 72(a). But the court will review such orders de novo when they completely dispose of a claim or defense. *See id.* at 72(b)(3).

Discovery sanctions typically fall into the former, "nondispositive" category. *See Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1462 (10th Cir. 1988). Nevertheless, the standard of review depends on an order's *actual effect* on the litigation. *Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1519 (10th Cir. 1995). The district court must therefore conduct de novo review of any discovery sanction that effectively grants or dismisses a claim or defense. *See Ocelot Oil*, 847 F.2d at 1463.

Mr. Bronchick asserts the sanctions order upheld by the district court was dispositive, claiming in his briefing that the order disposed of the veil-piercing issue by providing definitive support for the court's finding that Flamingo West was his alter ego. At oral argument, however, Mr. Bronchick abandoned the veil-piercing argument and instead contended the sanctions order disposed of the fraudulent transfer claim Boxer failed to prove at trial. *See* Oral Arg. at 28:10 ("The sanctions order was dispositive of the fraudulent transfer claim. . . . Whether or not it was also dispositive of other claims really doesn't matter.").

-7-

Neither argument acknowledges what actually happened below. First, the district court concluded that Mr. Bronchick's "failure to explain [his] arguments" on the standard of review was itself "sufficient to overrule [that] aspect of [his] objection." App. 222. Moreover, the court determined the standard of review *did not matter anyway*; Mr. Bronchick's "failure to explicate [his] argument" on the merits of the order rendered his objection "insufficient to establish reversible error" even on de novo review. *Id.*

We cannot reverse the district court's choice of standard under these circumstances—indeed, we see nothing to reverse. Mr. Bronchick wanted de novo review, but his objection would have failed no matter what. He did not give the court below—nor has he given us—any substantiated explanation of how the sanctions order actually disposed of a claim or defense. And even had he done so, it would not have cured his failure to provide adequate briefing to the district court regarding the merits of his objection. His failure to file a fully-formed objection when he had the chance cannot entitle him to a do-over in this court.

### *2. The District Court's Decision on the Merits*

In light of the above, Mr. Bronchick's assertion that the district court should have deemed the sanctions order erroneous has no merit.

We typically review district court discovery orders—including those imposing sanctions—under an abuse of discretion standard. *See Lee v. Max Int'l, LLC*, 638 F.3d 1318, 1320 (10th Cir. 2011). Neither party has directed us to any

-8-

precedent indicating we should alter that standard when the court below affirms a magistrate judge's sanctions order, rather than deciding the issue in the first instance. And we have used an abuse of discretion standard in these circumstances before—albeit in a nonprecedential, unpublished opinion. *See Porter Bridge Loan Co. v. Northrop*, 566 F. App'x 753, 755–56 (10th Cir. 2014) (unpublished) (citing *Lee*, 638 F.3d at 1320). Moreover, we see nothing in the law respecting magistrate judges that compels or implies any modification to our review of district court decisions on account of a magistrate judge's involvement. *See* 28 U.S.C. § 636; Fed. R. Civ. P. 72.

But even without that procedural quirk, Mr. Bronchick's appeal of this issue fails under de novo review. The Federal Rules of Civil Procedure permit district courts to enter findings on disputed facts as punishment for violating a discovery order. *See* Fed. R. Civ. P. 37(b)(2)(A)(i) ("If a party or a party's officer, director, [or] managing agent . . . fails to obey an order to provide or permit discovery . . . the court where the action is pending may issue further just orders . . . includ[ing] . . . directing that matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims.").

In sum, the district court did not err in upholding the sanctions order against Mr. Bronchick.

### B. Piercing the Corporate Veil

We next consider Mr. Bronchick's challenge to the district court's decision to pierce Flamingo West's corporate veil and hold him personally liable for the breach.[2]

We review the district court's findings of fact for clear error. *See Sw. Stainless, LP v. Sappington*, 582 F.3d 1176, 1183 (10th Cir. 2009). "A finding of fact is clearly erroneous if it is without factual support in the record or if the appellate court, after reviewing all the evidence, is left with the definite and firm conviction that a mistake has been made." *Nieto v. Kapoor*, 268 F.3d 1208, 1217 (10th Cir. 2001) (quoting *Tosco Corp. v. Koch Indus., Inc.*, 216 F.3d 886, 892 (10th Cir.2000)). But veil piercing is an equitable remedy. *See Great Neck Plaza, L.P. v. Le Peep Rests., LLC*, 37 P.3d 485, 490 (Colo. App. 2001); *Gorsich v. Double B Trading* Co., 893 P.2d 1357, 1362 (Colo. App. 1994). Thus, we

---

[2] Our rules make clear that "[w]hen sufficiency of the evidence is raised," as Mr. Bronchick has done here, "the entire relevant trial transcript must be provided." 10th Cir. R. 10.1(A)(1)(a). The full trial transcript in this case runs for 497 pages over three volumes. Even with his supplement, Mr. Bronchick's appendix omits pages 3–13, 15–22, 338–86, 390–95, 401–417, 424–65, and 484–97. He contends that he was "[t]he only witness to testify concerning the facts to support the alter ego claim," and that his full testimony was included in the appendix. Aplt. Br. at 39 n.9. But the rule requires the *entire* relevant transcript. It is not for Mr. Bronchick to pick and choose what portions of the trial related to veil-piercing issue and what portions did not. *See Roberts v. Roadway Express, Inc.*, 149 F.3d 1098, 1104–05 (10th Cir. 1998). Moreover, Mr. Bronchick has omitted from the appendix several exhibits that the trial court relied on in its analysis. This failure to designate an adequate appendix frees the court of any obligation to consider his appeal of this issue. *Id.* at 1105. Again, however, we exercise our discretion to reach this claim of error because it does not affect the outcome.

review the district court's ultimate decision to pierce the veil for abuse of discretion.  *See Clark v. State Farm Mut. Auto. Ins. Co.*, 433 F.3d 703, 709 (10th Cir. 2005).

To support veil piercing, Boxer had to make three distinct showings by clear and convincing evidence.[3]

First, Boxer had to show that Flamingo West was the "alter ego" of Mr. Bronchick—that is, "a mere instrumentality" for carrying out his affairs.  *Griffith v. SSC Pueblo Belmont Operating* Co., 381 P.3d 308, 313 (quoting *In re Phillips*, 139 P.3d 639, 644 (Colo. 2006)).  Under Colorado law, that showing hinged on eight nonexclusive factors geared toward identifying abuse of the "corporate form."  *Phillips*, 139 P.3d at 644.  In considering the alter-ego prong, the court asks "whether (1) the corporation is operated as a distinct business entity, (2) funds and assets are commingled, (3) adequate corporate records are maintained, (4) the nature and form of the entity's ownership and control facilitate misuse by an insider, (5) the business is thinly capitalized, (6) the corporation is used as a 'mere shell,' (7) shareholders disregard legal formalities, and (8) corporate funds or assets are used for noncorporate purposes."  *Id.*

_____

[3] Colorado law only requires proof by a preponderance of the evidence.  *See Griffith v. SSC Pueblo Belmont Operating Co.*, 381 P.3d 308, 313 & n.3 (Colo. 2016); *see also McCallum Family L.L.C. v. Winger*, 221 P.3d 69, 72–73 (Colo. App. 2009) (explaining why the Colorado Supreme Court's invocation of the clear and convincing evidence standard in dicta was at odds with Colorado positive law). Apparently neither party ever apprised the district court of this lower burden.

But an alter-ego finding does not automatically lead to veil piercing. Boxer also had to prove two more elements. First, Boxer needed to show that Mr. Bronchick used "the corporate fiction," *id.*, of Flamingo West "to perpetuate a wrong." *Griffith*, 381 P.3d at 313. Second, Boxer had to prove that "disregarding" Flamingo West's separate legal status "would achieve an equitable result." *Id.*

### 1. The Alter-Ego Finding

Mr. Bronchick offers numerous theories as to why the evidence could not possibly support the findings necessary to establish Flamingo West was his corporate alter ego. He notes first that the district court relied "predominantly, if not entirely," on the sanctions order to reach its determination. Aplt. Br. at 39. He then proceeds to attack the findings established by sanction, and the court's use of those findings to favor Boxer on the alter-ego analysis. Next he attacks the court's discussion of commingled assets and the use of corporate funds for noncorporate purposes. Specifically, he asserts the court had insufficient evidence of commingled assets because transactions between himself and Flamingo West were properly documented. His argument against the court's finding on the use of corporate funds for noncorporate purposes is twofold. First, he asks us to create a de minimis exception for that consideration. Second, he specifically challenges the court's finding that Flamingo West made his brother's car payments.

### a. The Sanctions Order

As Mr. Bronchick acknowledges, the findings entered under the discovery sanctions order provided some of the evidence to support Boxer's claim. With regard to the first prong, those findings helped establish Flamingo West's lack of distinctiveness, inadequate record keeping, structural facilitation of abuse, and thin capitalization.

Mr. Bronchick makes several assertions challenging the district court's reliance on the sanctions order.

First, Mr. Bronchick claims the evidence does not support the findings entered by sanction. But that was precisely the point of the sanctions. Because Mr. Bronchick failed to fulfill his discovery obligations, the district court entered findings that did not *require* any support in evidence. This was appropriate because Mr. Bronchick's decisions to withhold evidence from Boxer frustrated its preparation for trial.

Next, Mr. Bronchick claims the district court made inconsistent factual determinations. He bases this argument on the theory that the sanctions order contradicts some of the court's findings from trial related to allegedly fraudulent transfers between Flamingo West and himself. Again, his position betrays a misunderstanding of the sanctions order. The sanctions order included *general* findings that Flamingo West made transfers to Mr. Bronchick—and possibly others—under conditions that satisfy several theories of fraudulent transfer. This

-13-

did not mean that *every* transfer Flamingo West made was fraudulent. Nor did it imply that the specific real-estate transactions Mr. Bronchick points to in support of his inconsistency argument were fraudulent. It was therefore not inconsistent for the district court to find that Flamingo West made fraudulent transfers, but that Boxer had not proven *particular* transfers were fraudulent.

Finally, Mr. Bronchick employs a legal argument to fight the district court's sanctions-supported factual finding that Flamingo West was inadequately capitalized. He suggests the court should only have considered Flamingo West's capitalization at the time of corporate formation, not at the time of the breach of contract. But Colorado's alter-ego test looks to a corporation's *present* capital, not its initial capitalization. *See Griffith*, 381 P.3d at 313 (explaining the test as whether the business "*has* grossly inadequate capital" (emphasis added) (quoting *Luckett v. Bethlehem Steel Corp.*, 618 F.2d 1373, 1378 n.4 (10th Cir. 1980)); *Leonard v. McMorris*, 63 P.3d 323, 330 (Colo. 2003) (characterizing the inquiry as focused on "*absence of corporate assets* and undercapitalization" (emphasis added) (quoting *Newport Steel Corp. v. Thompson*, 757 F. Supp. 1152, 1157 (D. Colo. 1990)). And for good reason, as the term "thin capitalization" denotes "[t]he financial condition of a firm that has a high ratio of liabilities to capital." *Capitalization*, Black's Law Dictionary (10th ed. 2014).

A corporation can become thinly capitalized over time regardless of its initial capitalization. This could happen if it lets assets dwindle, allows liabilities

-14-

to increase, or both. It does not matter how much capital a corporation had at formation, although that could be evidence supporting a finding of undercapitalization. What matters is whether the defendant is deliberately using a subservient corporation incapable of satisfying liabilities it has or expects to incur.

### b. *Commingled Assets*

Mr. Bronchick also challenges the court's finding that he and Flamingo West commingled assets. Specifically, the court found Mr. Bronchick and Flamingo West "frequently loaned money to each other" but kept no record of those loans apart from a running total balance reflected on tax returns. App. 607. Moreover, the court noted Mr. Bronchick's claim that he expended roughly $160,000 of personal credit on behalf of Flamingo West for which he never secured a promissory note or produced receipts. Mr. Bronchick argues the loans were also documented on Flamingo West's balance sheets, and belabors the point that Flamingo West owed *him* money and was not paying him a salary for some time. He does not negate the district court's finding that the loans between himself and Flamingo West lacked the traditional indicia of arms-length transactions.

### c. *Use of Corporate Funds for Noncorporate Purposes*

Next we address Mr. Bronchick's challenges to the court's finding that Flamingo West used corporate funds for noncorporate purposes. Mr. Bronchick

accepts the court's finding that Flamingo West used its own funds to cover personal expenses such as "Amazon Video[s] on Demand, . . . Netflix, . . . iTunes Music Store [purchases], . . . NutriSystem, [and] clothing," as well as purchases from "Sam Ash Music, . . . American Musical, . . . Classmates.com, . . . Weis Supermarkets, and . . . Cheaper Than Dirt, a firearm supply retailer." App. 612. The court also found Flamingo West made car payments for Mr. Bronchick's brother.

Mr. Bronchick contests these findings, asking us to forgive them since they were relatively small amounts that did not affect Flamingo West's business operations. Again, Mr. Bronchick offers no law or logic to support his argument, and we have found none. The *amount* of corporate funds devoted to personal expenses does not matter so much as the *fact* that corporate funds were devoted to personal expenses. Though Mr. Bronchick testified that at least some of the personal expenses were recorded as distributions, the district court did not have to believe him.

### 2. *Use of the Corporate Form to Perpetrate a Wrong*

The second prong of the veil-piercing analysis looks to the result achieved by the misuse of the corporate form. Boxer alleged that the wrong perpetrated by Mr. Bronchick was siphoning off Flamingo West's assets—in some cases into Mr. Bronchick's own pocket—to ensure that Boxer could never recover the unpaid rent. The financial particulars of the situation—which Mr. Bronchick's appeal

-16-

focuses on—do not matter. The record supports the district court's determination on this prong.

### 3.  *Equitable Result*

Third and finally, Mr. Bronchick's arguments on whether or not veil piercing would yield an equitable result is unavailing. He offers no citations to the record or legal authority to support his view of the equities. He merely attacks the sanctions order's fairness to him.

But the record establishes that Flamingo West signed an expansive, long-term lease; breached that lease; and racked up hundreds of thousands of dollars in unpaid rent and fees that it could not possibly satisfy, all while continuing to pay Mr. Bronchick and his personal expenses. As sole owner, operator, officer and shareholder of Flamingo West, Mr. Bronchick was responsible for its conduct. The district court did not err in concluding that Mr. Bronchick took advantage of Flamingo West's corporate form while failing to honor its formal distinctiveness from himself. In these circumstances, we cannot say that the district court abused its discretion in weighing the equities.

\* \* \*

In sum, Mr. Bronchick has failed to identify reversible error in the district court's decision to pierce the corporate veil.

## C. Damages

Lastly, we consider Mr. Bronchick's argument that the district court erred by awarding Boxer compensatory damages.[4]  His argument raises two questions, which we address in turn.  First, did the district court have sufficient evidence to find and reasonably calculate Boxer's damage?  Second, did the district court abuse its discretion by soliciting new damages calculations several months after trial?

### 1.  Proof of Damage at Trial

Because it turns on a question of fact, *see Tull v. Gundersons, Inc.*, 709 P.2d 940, 943 (Colo. 1985) (en banc); *Interbank Invs., L.L.C. v. Vail Valley Consol. Water Dist.*, 12 P.3d 1224, 1231 (Colo. App. 2000), we review the district court's finding on damages for clear error, *see Niemi v. Lasshofer*, 770 F.3d 1331, 1354 (10th Cir. 2014).

In Colorado, the victim of a contract breach must prove "by a preponderance of the evidence that he has *in fact* suffered damage" and "provide[] a *reasonable basis for a computation*" of that damage.  *Riggs v. McMurtry*, 400 P.2d 916, 919 (Colo. 1965) (emphasis added); *see W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992) (en banc); *see also Tull*, 709 P.2d at 943

---

[4]  Mr. Bronchick's arguments regarding damages suffer from the same appendix and preservation deficiencies that plague his other arguments.  Again, we consider them even though we have no obligation to do so.

-18-

(applying *Riggs* to breach of contract); *List v. Dahnke*, 638 P.2d 824, 825–26 (Colo. App. 1981) (discussing calculation of damages for unpaid rent).

We see no obvious error in the district court's damages finding. The court found at trial that Mr. Bronchick was personally liable for Flamingo West's breach of the lease. The court had already granted summary judgment on that breach claim for an uncontested sum of $2,428,625. The district court therefore rightly concluded in its decision following the bench trial that Boxer had proven damages from the breach.

The district court also had ample support following the bench trial to calculate Mr. Bronchick's personal liability.[5] But the district court concluded that additional briefing would help with the final damages calculation, inviting the parties to submit post-trial arguments on what they thought the correct amount should be. We do not interpret the court's request as a finding that damages had not been proven at trial, but as indicating its objective to reach the correct figure in light of the evidence submitted.

---

[5] We question whether Mr. Bronchick actually reserved the right to contest damages at trial. The district court thought he had, but only cited Bronchick & Associates, P.C.'s motion opposing summary judgment to support this point. *See* App. 619. Of course, that filing preserved *Bronchick & Associates, P.C.'s* right to contest damages, but not Mr. Bronchick's right. *See* Def. Bronchick & Associates, P.C.'s Resp. Opp'n Pl.'s Mot. Partial Summ. J., Doc. 105 at 1 n.1.

## 2. *The District Court's Request for Recalculation*

In any event, a "district court has broad discretion to reopen a case to accept additional evidence and that decision will not be overturned on appeal absent an abuse of that discretion." *Smith v. Rogers Galvanizing Co.*, 148 F.3d 1196, 1197–98 (10th Cir. 1998). In exercising this power, "[t]he court should consider the time the motion [if any] is made, the character of additional testimony and the potential prejudicial effect in granting or denying the motion." *Id.* at 1198 (quoting *Joseph v. Terminix Int'l Co.*, 17 F.3d 1282, 1285 (10th Cir.1994)). At bottom, however, the ultimate question is whether or not reopening evidence is fair to both parties. *Id.*

Mr. Bronchick contends that the passage of time, as well as the additional opportunities it afforded Boxer to prove damages, makes the district court's reopening of evidence unfairly prejudicial. He refuses to acknowledge, however, that the district court *had already found in favor of Boxer* on the damages issue. Indeed, the court disagreed only with the *amount* of actual damage Boxer had argued for based on its reading of the lease. Contrary to Mr. Bronchick's assertions, we do not see the additional briefing on this issue as an ex parte communication, an additional opportunity to prove damages, or a violation of the scheduling order. Perhaps Mr. Bronchick should have been allowed to cross-examine Boxer's expert regarding his final calculation, but Mr. Bronchick never requested such an opportunity. And indeed, Mr. Bronchick's objections do not

come close to a sufficiently developed argument that he was denied due process. In sum, we think the district court was merely attempting to *give Mr. Bronchick an opportunity* to argue for reduced damages based on the court's final reading of the contract. Mr. Bronchick has no room to claim unfairness under these circumstances. If anything, the additional submissions allowed the court to reach a more fair damages figure that incorporated the court's final interpretation of the lease.

## III. Conclusion

For the forgoing reasons, we **AFFIRM** the district court with respect to each of Mr. Bronchick's issues on appeal.

ENTERED FOR THE COURT

Timothy M. Tymkovich
Chief Judge