Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us.  Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
September 26, 2016

**2016 CO 61**

**No. 16SA124, <u>Meeks v. SSC Colorado Springs Colonial Columns Operating Co.</u>—Constitutional Law—Personal Jurisdiction—Corporations and Business Organizations—Related or Affiliated Entities.**

The supreme court holds that the trial court must apply the test announced in <u>Griffith v. SSC Pueblo Belmont Operating Co.</u>, 2016 CO 60, __ P.3d __, to determine whether nonresident parent companies may be haled into court in Colorado based on the actions of their resident subsidiaries.  It also holds that, while an evidentiary hearing is not always required for a ruling on a C.R.C.P. 12(b)(2) motion, this case requires a hearing to fully address this case's complex record and to apply the fact-intensive <u>Griffith</u> test.

## The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

### 2016 CO 61

### Supreme Court Case No. 16SA124
*Original Proceeding Pursuant to C.A.R. 21*
El Paso County District Court Case No. 15CV31423
Honorable Thomas Kelly Kane, Judge

### In Re

### Plaintiff:

Khalid Meeks, as Attorney-in-Fact of Gera Meeks,

v.

### Defendants:

SSC Colorado Springs Colonial Columns Operating Company, LLC, d/b/a Colonial Columns Nursing Center; SavaSeniorCare Administrative Services, LLC; SavaSeniorCare Consulting LLC; SSC Disbursement Company LLC; Colorado Holdco LLC; SSC Equity Holdings LLC; SavaSeniorCare LLC; Master Tenant Parent Holdco LLC; Proto Equity Holdings LLC; Terpax Inc.; and Micky Belinski, in his capacity as Administrator of Colonial Columns Nursing Home.

### Rule Made Absolute
*en banc*
September 26, 2016

**Attorneys for Plaintiff:**
Reddick Moss, PLLC
Brent L. Moss
Brian D. Reddick
Robert W. Francis
Joshua K. Smith
  *Little Rock, Arkansas*

**Attorneys for Defendants:**
Gordon & Rees LLP
Thomas B. Quinn
Joshua G. Urquhart
David M. Clarke
  *Denver, Colorado*

**CHIEF JUSTICE RICE** delivered the Opinion of the Court.

¶1    In this case, we hold that the trial court must apply the test announced in Griffith v. SSC Pueblo Belmont Operating Co., 2016 CO 60, __ P.3d __, to determine whether nonresident parent companies may be haled into court in Colorado based on the actions of their resident subsidiaries. We also hold that, while an evidentiary hearing is not always required for a ruling on a C.R.C.P. 12(b)(2) motion, this case requires a hearing to fully address this case's complex record and to apply the fact-intensive Griffith test. The trial court must hold a hearing to resolve disputed jurisdictional facts and develop the record before determining whether the nonresident defendants are subject to personal jurisdiction in Colorado. We therefore make our rule to show cause absolute and remand the case for proceedings consistent with this opinion.

## I. Facts and Procedural History

¶2    The facts of this case are similar to those in Griffith, which we also announce today. Here, the plaintiff, Khalid Meeks, filed a complaint against ten entities and one individual alleging that the parties injured his mother, who was a resident of Colonial Columns Nursing Center. He seeks relief based on two causes of action: (1) negligence, and (2) violations of Colorado's Consumer Protection Act, §§ 6-1-101 to -1121, C.R.S. (2016). The individual and four of the ten entities conceded jurisdiction and answered the complaint. As in Griffith, the other six entities (the "Nonresident Defendants") contested jurisdiction, arguing that they are not subject to personal jurisdiction in Colorado. See ¶ 2. The Nonresident Defendants are upstream parent companies of the resident company (the nursing center) and the entities that conceded jurisdiction. See id. at ¶¶ 3–5.

¶3 In a brief written order, the trial court denied the Nonresident Defendants' request for an evidentiary hearing and their C.R.C.P. 12(b)(2) motion to dismiss. It found that "the 'nonresident' Defendants have sufficient contacts in the state of Colorado to justify Colorado courts extending general jurisdiction over these Defendants." It then concluded that exercising personal jurisdiction was proper because the resident and nonresident companies were "not operated as distinct entities."

¶4 The Nonresident Defendants petitioned this court for relief under C.A.R. 21, arguing that the trial court erred by (1) denying their request for an evidentiary hearing, (2) failing to apply an alter-ego or agency test before determining that the entities were not distinct, and (3) finding that it had general personal jurisdiction over them. We issued a rule to show cause why the trial court's order should not be vacated.

## II. Analysis

¶5 The Nonresident Defendants first argue that the trial court should have applied a more stringent test before exercising general personal jurisdiction over them. We agree.

¶6 In Griffith, we held that a trial court must apply the following test to determine whether it may exercise personal jurisdiction over a nonresident parent company:

> First, the trial court shall determine whether it may pierce the corporate veil and impute the resident subsidiary's contacts to the nonresident parent company. If the resident subsidiary's contacts may be imputed to the nonresident parent company, the court shall analyze all of the nonresident company's contacts with Colorado—including the resident subsidiary's contacts—to determine whether exercising either general or specific personal jurisdiction over the company comports with due process. However, if the trial court concludes that it may not pierce the corporate veil, it shall treat each entity separately and analyze only the

contacts that each parent company has with the state when performing the personal jurisdiction analysis.

¶ 1. A nonresident company "is subject to general jurisdiction only where it is incorporated, has its principal place of business, or is 'essentially at home.'" Id. at ¶ 19; accord Magill v. Ford Motor Co., 2016 CO 57, ¶ 22, __ P.3d __ ("A corporation that operates in many places can scarcely be deemed at home in all of them." (quoting Daimler A.G. v. Bauman, 134 S. Ct. 746, 762 n.20 (2014))). However, even if a nonresident company cannot be subjected to general jurisdiction in Colorado, a Colorado court may exercise specific jurisdiction over it if the company has "'certain minimum contacts' with Colorado and the cause of action arises out of those contacts." Griffith, ¶ 20.

¶7 Like the trial court in Griffith, the trial court here did not apply this test before concluding that the Nonresident Defendants were subject to personal jurisdiction in Colorado. The trial court's statement that the Nonresident Defendants were "not operated as distinct entities" was inadequate to support piercing the corporate veil to reach the upstream parent entities. See id. at ¶¶ 15–16. Without considering the resident nursing center's Colorado contacts, it is not clear which in-state contacts would support exercising personal jurisdiction over the Nonresident Defendants. Moreover, while the trial court concluded that the Nonresident Defendants were subject to general personal jurisdiction, it failed to explain which contacts rendered the Nonresident Defendants "essentially at home" in Colorado. See Magill, ¶¶ 22–23. Thus, on remand,

the trial court must apply the Griffith test before determining whether it may exercise either general or specific personal jurisdiction over the Nonresident Defendants.

¶8    Additionally, the Nonresident Defendants argue that the trial court should have held a hearing before concluding that it could exercise personal jurisdiction over them. Because of complexities presented in this case, as well as the fact-intensive nature of the Griffith test, we agree.

¶9    At its discretion, a trial court may address a C.R.C.P. 12(b)(2) motion to dismiss for lack of personal jurisdiction either on documentary evidence alone or after holding a hearing. Archangel Diamond Corp. v. Lukoil, 123 P.3d 1187, 1192 (Colo. 2005), as modified on denial of reh'g (Dec. 19, 2005). A trial court should consider a variety of factors to determine whether a hearing on the personal jurisdiction issue is appropriate, including whether:

> it is "unfair to force an out-of-state defendant to incur the expense and burden of a trial on the merits in the local forum without first requiring more of the plaintiff than a prima facie showing of facts essential to in personam jurisdiction. A court may so determine, for example, when the proffered evidence is conflicting and the record is rife with contradictions, or when a plaintiff's affidavits are patently incredible."

Id. at 1193 (quoting Foster–Miller, Inc. v. Babcock & Wilcox Can., 46 F.3d 138, 145–46 (1st Cir. 1995)). "A trial court may not decide material issues of disputed jurisdictional fact against a plaintiff without . . . a hearing." Id. at 1190. While "a prima facie showing of personal jurisdiction is sufficient to overcome a 12(b)(2) motion, the plaintiff ultimately bears the burden of demonstrating personal jurisdiction by the close of trial by a preponderance of the evidence." Id. at 1192 n.3.

¶10 Unlike in <u>Griffith</u>, where the trial court held a hearing and made substantial factual findings before applying the "distinct entities" test, <u>see</u> ¶¶ 4–5, the trial court in in this case did not hold an evidentiary hearing. Instead, after reviewing only the documentary evidence, the trial court found that the Nonresident Defendants had sufficient contacts to justify extending general personal jurisdiction over them and that the entities "were not operated as distinct entities." It did not support these conclusions with factual findings explaining why the resident subsidiary was indistinct from the Nonresident Defendants, nor did it explain which of the Nonresident Defendants' contacts supported exercising general jurisdiction over them.

¶11 The record in this case demonstrates that the defendants are part of a complicated organizational structure. It presents conflicting evidence regarding the distinctions between the Nonresident Defendants and the resident subsidiary, including whether the entities recognized formal distinctions between parent and subsidiary companies, whether the subsidiary had adequate capital, how the money flowed between the entities, and whether the subsidiary was merely an alter-ego of the Nonresident Defendants. <u>See</u> <u>Griffith</u>, ¶ 13 (listing factors to consider when determining whether a subsidiary is merely the alter-ego of the parent company).

¶12 Applying the <u>Griffith</u> test to this case requires a more nuanced approach to the record than the trial court used when applying the "distinct entities" test. Thus, while a hearing is not always necessary to determine whether the trial court has personal jurisdiction over a nonresident parent company, the record in this case presents conflicting evidence, and fairness requires that the trial court resolve these conflicts

6

before concluding that the Nonresident Defendants are subject to either general or specific personal jurisdiction in Colorado.

## III. Conclusion

¶13 On remand, the trial court must hold a hearing to resolve the disputed jurisdictional facts and must then apply the framework described in <u>Griffith</u> to determine whether the Nonresident Defendants are subject to personal jurisdiction in Colorado. We therefore make our rule to show cause absolute and remand the case for proceedings consistent with this opinion.