Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us. Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
September 26, 2016

**2016 CO 60**

**No. 16SA114, Griffith v. SSC Pueblo Belmont Operating Co.—Constitutional Law—
Personal Jurisdiction—Corporations and Business Organizations—Related or
Affiliated Entities.**

The supreme court holds that, to exercise personal jurisdiction over a
nonresident parent company based on the in-state contacts of its resident subsidiary, a
trial court shall perform the following analysis: First, the trial court shall determine
whether it may pierce the corporate veil and impute the resident subsidiary's contacts
to the nonresident parent company. If the resident subsidiary's contacts may be
imputed to the nonresident parent company, the court shall analyze all of the
nonresident company's contacts with Colorado—including the resident subsidiary's
contacts—to determine whether exercising either general or specific personal
jurisdiction over the company comports with due process. However, if the trial court
concludes that it may not pierce the corporate veil, it shall treat each entity separately
and analyze only the contacts that each parent company has with the state when
performing the personal jurisdiction analysis. Because the trial court did not perform
this two-step analysis when it determined that the petitioners were subject to personal
jurisdiction in Colorado, the supreme court makes its rule to show cause absolute.

## The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

## 2016 CO 60

## Supreme Court Case No. 16SA114

*Original Proceeding Pursuant to C.A.R. 21*
Pueblo County District Court Case No. 15CV30317
Honorable Jill Mattoon, Judge

### In Re

### Plaintiff:

Christine Griffith, individually and as personal representative of the Estate of Antonio Jimenez, Jr.,

v.

### Defendants:

SSC Pueblo Belmont Operation Company LLC d/b/a Belmont Lodge Health Care Center; SavaSeniorCare Administrative Services; SavaSeniorCare Consulting LLC; SSC Disbursement Company LLC; SSC Special Holdings LLC; SavaSeniorCare LLC; SVCare Holdings LLC; Canyon Sudar Partners LLC; Special Holdings Parent Holdco LLC; Proto Equity Holdings LLC; Terpax Inc.; Michael Dunn, in his capacity as Administrator of Belmont Lodge Health Care Center; and Cynthia Kovalcik, in her capacity as Administrator of Belmont Lodge Health Care Center.

### Rule Made Absolute

*en banc*
September 26, 2016

**Attorneys for Plaintiff:**
Reddick Moss, PLLC
Brent L. Moss
Brian D. Reddick
Robert W. Francis
Joshua K. Smith
  *Little Rock, Arkansas*

**Attorneys for Defendants:**
Gordon & Rees LLP
Thomas B. Quinn
Joshua G. Urquhart
David M. Clarke

*Denver, Colorado*

**Attorneys for Amicus Curiae Colorado Health Care Association:**
Kittredge LLC
Daniel D. Domenico
  *Denver, Colorado*

MRDLaw
Michael Francisco
  *Denver, Colorado*

**CHIEF JUSTICE RICE** delivered the Opinion of the Court.

¶1 This case raises the following question: When may a nonresident parent company be haled into a Colorado court based on the activities of its resident subsidiary? We hold that, to exercise personal jurisdiction over a nonresident parent company, a trial court shall perform the following analysis: First, the trial court shall determine whether it may pierce the corporate veil and impute the resident subsidiary's contacts to the nonresident parent company. If the resident subsidiary's contacts may be imputed to the nonresident parent company, the court shall analyze all of the nonresident company's contacts with Colorado—including the resident subsidiary's contacts—to determine whether exercising either general or specific personal jurisdiction over the company comports with due process. However, if the trial court concludes that it may not pierce the corporate veil, it shall treat each entity separately and analyze only the contacts that each parent company has with the state when performing the personal jurisdiction analysis. Because the trial court did not perform this two-step analysis when it determined that the petitioners were subject to personal jurisdiction in Colorado, we make our rule to show cause absolute and remand the case for further proceedings consistent with this opinion.

## I. Facts and Procedural History

¶2 The plaintiff, Christine Griffith, filed a complaint against nine entities[1] and two individuals alleging that they injured her father, who was a resident of a nursing home

---

[1] The complaint originally named eleven entities as defendants. However, in 2013, Canyon Sudar Partners, LLC, merged into SVCare Holdings, LLC. SVCare Holdings in turn merged into SavaSeniorCare, LLC, leaving nine existing entities as named defendants.

operated by defendant SSC Pueblo Belmont Operating Company d/b/a Belmont Lodge Health Care Center ("Belmont Lodge"). She alleges that her father's injuries eventually caused his death, and she seeks relief based on three causes of action: negligence, wrongful death, and violations of the Colorado Consumer Protection Act, sections 6-1-101 to -1121, C.R.S. (2016). The individuals and four of the nine entities conceded jurisdiction and answered the complaint. Five of the entities, however, contested jurisdiction, arguing that they are nonresident companies who are not subject to personal jurisdiction in Colorado.

¶3    The parties agree that Belmont Lodge is one piece of a complex organizational structure. Belmont Lodge operates a nursing home in Pueblo, Colorado. It is a limited liability company ("LLC") whose sole member is SSC Special Holdings, LLC. SSC Special Holdings is a wholly owned subsidiary of Special Holdings Parent Holdco, LLC. Special Holdings Parent Holdco is, in turn, a wholly owned subsidiary of SavaSenior Care, LLC.[2] Proto Equity Holdings, LLC, is the sole member of SavaSenior Care. Finally, Terpax, Inc., sits at the top of this organization as the parent corporation for all of these entities. SSC Special Holdings, Special Holdings Parent Holdco, SavaSenior Care, Proto Equity Holdings, and Terpax (collectively, the "Nonresident Defendants") filed a C.R.C.P. 12(b)(2) motion to dismiss for lack of personal jurisdiction.

_____

[2] SavaSenior Care owns three other subsidiaries in addition to Special Holdings Parent Holdco: Admin Parent Holdco, LLC; Disbursement Parent Holdco, LLC; and Consulting Parent Holdco, LLC. Griffith did not name these entities as defendants, but they each own a subsidiary that is a defendant. The subsidiaries that are parties to the suit are SavaSeniorCare Administrative Services, LLC; SavaSeniorCare Consulting, LLC; and SSC Disbursement, LLC. Each of these subsidiaries provided services to Belmont Lodge and have conceded jurisdiction.

4

¶4 After holding an evidentiary hearing, the trial court found that the Nonresident Defendants are all "Delaware limited liability companies with their principal place of business in Georgia (and Tennessee with respect to Terpax)." It also found that the Nonresident Defendants "(i) have never registered to do business in the State of Colorado, (ii) have never had a registered agent or other authorized representative in the State of Colorado, and (iii) have never transacted business in the State of Colorado." None of the Nonresident Defendants ever maintained a bank account, had any employees, solicited business, or held themselves out as doing business in Colorado. Only Terpax incurred or filed a tax return with Colorado. The Nonresident Defendants did not do business as Belmont Lodge and did not hold the operating license for Belmont Lodge. The trial court also acknowledged that the Nonresident Defendants are all separate legal entities from Belmont Lodge.

¶5 Despite these findings, the trial court stated that it "must consider the totality of the circumstances, including whether the [Nonresident] Defendants operated as separate entities from the nursing home." The trial court then found that the Nonresident Defendants operate out of the same office in Atlanta, Georgia, which is the same office as the entities that did not contest jurisdiction. It also found that the Nonresident Defendants all received "direct or indirect financial benefit from the Colorado nursing home operation" based on the "pyramid of ownership" running upstream from Belmont Lodge to Terpax.

¶6 The trial court then cited Bolger v. Dial-A-Style Leasing Corp., 409 P.2d 517, 519 (Colo. 1966) for the proposition that a "wholly owned subsidiary can shield its

5

out-of-state parent company from jurisdiction in Colorado only 'where the two companies are operated as distinct entities.'" Relying on this rule, the trial court concluded that the entities all "operated the Colorado nursing home as one business in which they collectively controlled the operations, planning, management, and budget of [Belmont Lodge] in Colorado." Finally, the trial court concluded that jurisdiction over all the entities was proper because "a tort has been alleged in Colorado" and "the process which contributed to that tort is sufficient to invoke the jurisdiction of this court." See First Horizon v. Wellspring Capital Mgmt., 166 P.3d 166, 174 (Colo. App. 2007). Thus, the trial court denied the Nonresident Defendants' motion to dismiss for lack of personal jurisdiction.

¶7 The Nonresident Defendants petitioned this court for relief under C.A.R. 21, arguing that the trial court failed to apply an agency or alter-ego test to determine whether they were subject to personal jurisdiction. Instead, they argue, the trial court misapplied language from a fifty-year-old case to conclude that the parties were not "distinct entities" and, therefore, are subject to personal jurisdiction in Colorado. We issued a rule to show cause why the trial court's order should not be vacated.

## II. Original Relief

¶8 "Original relief under C.A.R. 21 is discretionary and limited in both purpose and availability." Magill v. Ford Motor Co., 2016 CO 57, ¶ 9, __ P.3d __ (quoting Dwyer v. State, 2015 CO 58, ¶ 4, 357 P.3d 185, 187). We often review challenges to personal jurisdiction under C.A.R. 21 because they raise the question of whether it is fair to require a nonresident party to defend itself here at all. Id. Determining when a court

6

may exercise jurisdiction over a nonresident defendant not only affects the fairness of the proceedings in this case but also has far-reaching implications for corporations with subsidiaries that do business in Colorado. Therefore, original relief is appropriate in this case.

### III. Standard of Review

¶9 Whether a court may exercise personal jurisdiction over a defendant is a question of law, which we review de novo. Id. at ¶ 11.

### IV. Analysis

¶10 The Nonresident Defendants argue that, before a Colorado court may exercise personal jurisdiction over them, it shall apply an established test to determine if the subsidiary's contacts may be imputed to them. We agree. Thus, determining whether the Nonresident Defendants are subject to personal jurisdiction requires a two-part inquiry: First, the court shall determine whether the resident subsidiary's contacts with the state may be imputed to each parent company. Second, if the subsidiary's contacts may be imputed to the parent company, then the court shall consider all of the parent company's contacts with the state—including the resident subsidiary's contacts—to determine if those contacts are sufficient to support either general or specific personal jurisdiction. If, however, the subsidiary's contacts may not be imputed to the parent company, then the court shall treat the parent company as a separate entity and examine only the parent company's individual contacts with the state to determine whether general or specific jurisdiction is appropriate.

## A. Piercing the Corporate Veil

¶11     A legal entity, such as an LLC, is separate from the members that own the entity. Weinstein v. Colborne Foodbotics, LLC, 2013 CO 33, ¶ 10, 302 P.3d 263, 266. Thus, as a general rule, "[n]either members nor managers of an LLC are personally liable for debts incurred by the LLC." Id. (citing § 7-80-705, C.R.S. (2016)). "Insulation from individual liability is an inherent purpose of incorporation; only extraordinary circumstances justify disregarding the corporate entity to impose personal liability." Leonard v. McMorris, 63 P.3d 323, 330 (Colo. 2003). Under some circumstances, however, a court may "pierce the corporate veil" to impose liability on an LLC's members. Id.; § 7-80-107, C.R.S. (2016).[3]   This is "an extraordinary remedy" and only limited circumstances justify disregarding the entity's form to impose liability on LLC members. In re Phillips, 139 P.3d 639, 647 (Colo. 2006).

¶12     Colorado's LLC statutes instruct that courts should "apply the case law which interprets the conditions and circumstances under which the corporate veil of a corporation may be pierced under Colorado law." § 7-80-107. Thus, a court may disregard the shield that the LLC form would normally provide for its members when (1) the entity is "merely the alter ego" of the member, (2) the LLC form is used to perpetuate a wrong, and (3) disregarding the legal entity would achieve an equitable

---

[3] The case law governing corporate veil-piercing applies to disregarding the LLC form as well. § 7-80-107. Therefore, while we recognize that the veil-piercing rules use terminology specific to corporate law, the rules apply with equal force using the analogous LLC terminology. For example, when a rule from a corporate case discusses "shareholders," the court should consider the LLC's "members." See §§ 7-80-102(9), -107, C.R.S. (2016).

result. See Phillips, 139 P.3d at 644 (discussing the test as applied to corporations). A claimant must prove these elements by a preponderance of the evidence. McCallum Family L.L.C. v. Winger, 221 P.3d 69, 72–73 (Colo. App. 2009) (citing § 13-25-127(1), C.R.S. (2009), which states that "the burden of proof in any civil action shall be by a preponderance of the evidence").[4]

¶13    An LLC is "merely the alter ego" of the member when the entity "is a mere instrumentality for the transaction of the shareholders' own affairs, and there is such unity of interest in the ownership that the separate personalities of the corporation and the owners no longer exist." Phillips, 139 P.3d at 644 (quoting Krystkowiak v. W.O. Brisben Co., 90 P.3d 859, 867 n.7 (Colo. 2004)). In the context of piercing the corporate veil to reach a parent company, a court should examine several factors which, if true, would support the conclusion that an entity is merely an alter ego of the owner:

> (1) The parent owns all the stock; (2) both have common directors and officers; (3) the parent finances the subsidiary; (4) the parent causes the subsidiary's incorporation; (5) the subsidiary has grossly inadequate capital; (6) the parent pays salaries or expenses of the subsidiary; (7) the subsidiary has no business except with its parent or subsidiary corporation or no assets except those transferred by its parent or subsidiary; (8) directors and officers do not act independently in the interests of the subsidiary; (9) formal legal requirements of the subsidiary such as keeping corporate minutes are not observed; (10) distinctions between the parent and subsidiary . . . are disregarded or confused; (11) subsidiaries do not have full board[s] of directors.

[4] In Phillips, 139 P.3d at 644, we remarked that "[a] claimant seeking to pierce the corporate veil must make a clear and convincing showing that each consideration has been met." However, as the court of appeals noted in McCallum Family, 221 P.3d at 72–73, this was dicta. Section 13-25-127(1) states that "the burden of proof in any civil action shall be by the preponderance of the evidence." We apply this statutory burden of proof unless issues of constitutional concern command otherwise. McCallum Family, 221 P.3d at 73 (citing Gerner v. Sullivan, 768 P.2d 701, 705–06 (Colo. 1989)).

Luckett v. Bethlehem Steel Corp., 618 F.2d 1373, 1378 n.4 (10th Cir. 1980) (citing Fish v. East, 114 F.2d 177, 191 (10th Cir. 1940) (applying Colorado law)); accord Friedman & Son, Inc. v. Safeway Stores, Inc., 712 P.2d 1128, 1131 (Colo. App. 1985).

¶14 The remaining parts of the test for piercing the corporate veil are less complicated, though no less important. A claimant must show that justice requires that the entity's form be disregarded because the entity was merely a fiction "used to perpetrate a fraud or defeat a rightful claim." Phillips, 139 P.3d at 644 (quoting Contractors Heating & Supply Co. v. Scherb, 432 P.2d 237, 239 (Colo. 1967)). Finally, "[a]chieving an equitable result is the paramount goal of traditional piercing of the corporate veil." Id. If the trial court determines, by a preponderance of the evidence, that this three-part test has been satisfied, it may disregard the LLC form and impute the resident subsidiary's contacts to the parent company.

¶15 In this case, the trial court found that the Nonresident Defendants "operated the Colorado nursing home as one business" and therefore determined that exercising personal jurisdiction over the Nonresident Defendants was appropriate. The trial court relied on its findings that the Nonresident Defendants received "direct or indirect financial benefit from the Colorado nursing home operation" and that the entities "operated the Colorado nursing home as one business in which they collectively controlled the operations, planning, management, and budget of" Belmont Lodge. Based on these findings, the trial court held that the companies were not operated as distinct entities and, therefore, it could disregard the legal protection the LLC form would otherwise provide in order to exercise jurisdiction over the parent companies.

10

However, this analysis was inadequate. Disregarding the LLC form is "an extraordinary remedy" that cannot be justified simply because a parent company receives a financial benefit from its subsidiaries. See Phillips, 139 P.3d at 647.

¶16 Moreover, the trial court erred by relying solely on Bolger to conclude that piercing the corporate form was appropriate. First, in Bolger, the court did not pierce the corporate veil, but rather noted that the companies in that case were operated as distinct entities. 409 P.2d at 519. The Bolger court's comment indicates that piercing the corporate veil is inappropriate if entities are distinct, but it does not suggest that concluding that entities are "not distinct" is sufficient to support disregarding the corporate form. See id. Second, in relying solely on Bolger, the trial court failed to acknowledge Colorado's LLC Act and fifty years of case law that describe the proper test and factors that govern when a court may disregard a legal entity's protection and impose liability on an owner. Therefore, on remand, the trial court shall apply this well-settled law to determine whether it may pierce the corporate veil or shall treat the Nonresident Defendants as separate entities.

## B. Personal Jurisdiction

¶17 After applying the appropriate test to determine whether the subsidiary's contacts with Colorado may be imputed to the Nonresident Defendants, the trial court shall consider whether each of the Nonresident Defendants' contacts with the state support the exercise of general or specific personal jurisdiction. If the subsidiary's contacts may be imputed to the parent company, then the court shall consider all of the parent company's contacts with the state—including the resident subsidiary's

11

contacts — to determine if those contacts are sufficient to support either general or specific personal jurisdiction. But if the subsidiary's contacts may not be imputed to the parent company, then the court shall treat the parent company and its subsidiary as separate entities and examine only the parent company's individual contacts with the state to determine whether exercising general or specific jurisdiction is appropriate.

¶18　"To exercise jurisdiction over a nonresident defendant, a Colorado court must comply with Colorado's long-arm statute and constitutional due process." Magill, ¶ 14. Because Colorado's long-arm statute confers the maximum jurisdiction allowed by due process, "we engage in a constitutional due process analysis to determine whether a Colorado court has jurisdiction over an out-of-state defendant." Id. Whether a state has personal jurisdiction over an entity turns on the entity's relationship with the state. Id. at ¶ 15.

¶19　Exercising general personal jurisdiction over the Nonresident Defendants would expose them to suits in Colorado for any and all claims against them, even if the parties and events underlying the claim have no connection to Colorado. Id. at ¶ 16. Because of the significant consequences of finding that a nonresident defendant is subject to general jurisdiction, a company is subject to general jurisdiction only where it is incorporated, has its principal place of business, or is "essentially at home." Id. at ¶¶ 16–17. After determining whether a subsidiary's contacts may be imputed to the parent company by applying the test described above, the trial court shall consider the imputed contacts in the context of the parent company's national or global contacts. Id. at ¶ 18. "A corporation that operates in many places can scarcely be deemed at home in

12

all of them." Id. at ¶ 22 (quoting Daimler AG v. Bauman, 134 S. Ct. 746, 762 n.20 (2014)). Because of this high burden, a company that is not incorporated in Colorado and does not have its principal place of business here will rarely be found to be "at home" in Colorado. Id. at ¶ 18.

¶20    However, even if a company is not "at home" in Colorado, a court in this state may exercise specific personal jurisdiction over the company under certain circumstances. Id. at ¶ 25. A company is subject to specific jurisdiction when it has "certain minimum contacts" with Colorado and the cause of action arises out of those contacts. Id. at ¶¶ 14, 25. Even a single act may subject a company to specific jurisdiction in a state if the company purposefully availed itself of the forum state by creating continuing obligations with the residents there and the controversy arises out of that action. Keefe v. Kirschenbaum & Kirschenbaum, P.C., 40 P.3d 1267, 1271–72 (Colo. 2002). Once a court determines that the defendant company established the necessary contacts with the state to support subjecting the company to specific jurisdiction, it shall also consider whether asserting personal jurisdiction "would comport with 'fair play and substantial justice'" by considering factors such as "the burden on the defendant, the forum state's interest in adjudicating the dispute, and the plaintiff's interest in obtaining convenient and effective relief." Id. (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476 (1985)).

¶21    Here, the trial court merely concluded that the parent companies were not "distinct entities" from the entities that had conceded jurisdiction in Colorado. It then concluded that exercising personal jurisdiction was proper. The trial court failed to

13

explain if it was exercising general or specific personal jurisdiction and did not support its conclusion with an examination of the entities' contacts with Colorado. Thus, this analysis was inadequate. Even if a subsidiary's contacts may be imputed to a parent company, the trial court shall still evaluate those contacts to determine whether exercising either general or specific personal jurisdiction comports with due process. Accordingly, on remand, after the trial court determines whether the subsidiary's contacts may be imputed to each of the Nonresident Defendants, it shall then evaluate those contacts to determine whether they support exercising general or specific personal jurisdiction over each of the Nonresident Defendants.

## V. Conclusion

¶22    In sum, when determining whether a nonresident parent company is subject to personal jurisdiction in Colorado based on the activities of its resident subsidiary, the trial court shall first determine whether it may pierce the corporate veil in order to impute the resident subsidiary's contacts to a parent company. If the subsidiary's contacts may be imputed to the parent company, the trial court shall consider all of the parent company's contacts—including the resident subsidiary's contacts—to determine whether those contacts support exercising either general or specific personal jurisdiction. If the trial court determines that it cannot pierce the corporate veil, then it shall treat the parent company and subsidiary as separate entities. In that situation, the trial court may only consider the parent company's individual contacts with the state to determine if exercising personal jurisdiction over the entity comports with due process.

14

¶23 Because the trial court in this case did not apply this framework when it determined that the Nonresident Defendants were subject to personal jurisdiction in Colorado, we make our rule to show cause absolute and remand the case for proceedings consistent with this opinion.