2017 CO 109

**Ruby D. STOCKDALE; Clara Cardwell, individually and as personal representative of Kenneth Ray Cardwell; Jennifer Lynn Lake; and Patricia Ann Rider Jones, a/k/a Patricia Ann Jones, Petitioners**

**v.**

**Chester J. ELLSWORTH, Respondent**

**and Concerning: XTO Energy, Inc.**

**Supreme Court Case No. 16SC798**

Supreme Court of Colorado.

December 18, 2017

Attorneys for Petitioners Ruby D. Stockdale, Clara Cardwell and Patricia Ann Jones: Law Office of John C. Seibert, LLC, John Seibert Durango, Colorado.

Attorneys for Petitioner Jennifer Lynn Lake: Law Office of David Liberman, LLC, David Liberman, Durango, Colorado

No appearance on behalf of Respondent.

JUSTICE MÁRQUEZ delivered the Opinion of the Court.

¶1 In 2009, XTO Energy, Inc., filed an interpleader action, seeking to resolve competing claims to oil and gas proceeds held by XTO. XTO named several potential claimants as defendants in the interpleader action, including Seawatch Royalty Partners, LLC (managed by Chester J. Ellsworth) and several alleged heirs of the record owner of the relevant oil and gas interests. After a bench trial, the court concluded that a group of individuals—deemed the true heirs of the record owner—were entitled to the proceeds. Pertinent here, the trial court also ruled that Seawatch's claims and defenses were frivolous; that Seawatch was an alter ego of Ellsworth; and that Seawatch and Ellsworth were jointly and severally liable for any future award of attorneys' fees. Ellsworth was subsequently joined as a party under C.R.C.P. 21 and served via substituted service. The post-judgment sanctions proceedings continued for another several years. During that time, Ellsworth contested his individual liability, arguing that the court lacked personal jurisdiction over him; that he had been improperly served; and that Seawatch was not, in fact, his alter ego. The trial court rejected these arguments and entered judgment jointly and severally against Seawatch and Ellsworth for approximately $1 million in attorneys' fees. Ellsworth appealed pro se.

¶2 In an unpublished opinion, the court of appeals vacated the judgment against Ellsworth, holding that the district court lacked jurisdiction to hold him jointly and severally liable for the attorneys' fee award because, as a nonparty, Ellsworth did not have notice and opportunity to contest his individual liability. XTO Energy, Inc. v. Ellsworth, No. 15CA1114, slip op. at 1, 2016 WL 4498512 (Colo. App. Aug. 25, 2016). Because we conclude that Ellsworth had adequate notice and

opportunity to challenge the alter ego findings that established his individual liability, we reverse the judgment of the court of appeals.

## I. Facts and Procedural History

¶3 In 2009, XTO Energy, Inc., a producer of oil and natural gas, filed an interpleader action to determine the rights to certain oil and gas proceeds held by XTO. At the time of filing, XTO operated two natural gas wells that were extracting gas from an area of pooled mineral interests in the Fruitland Formation in La Plata County. One of the record owners of a mineral interest within the pooled area was Roy P. Cardwell, who had recorded his title in 1938. Because Cardwell and his heirs could not be located in the 1990s when the Colorado Oil and Gas Conservation Commission authorized the pooling of interests in the area, the proceeds attributable to Cardwell's interest were held in suspense as the natural gas wells were developed. When XTO filed the interpleader action in 2009, the proceeds attributable to Cardwell's interest totaled approximately $2.7 million.

¶4 In its interpleader complaint, XTO sought a declaratory judgment as to who should receive the proceeds of Cardwell's interest. XTO identified as potential claimants the heirs of a Roy P. Cardwell who died in California in 1971 ("California Heirs"); the heirs of a Roy P. Cardwell who died in Kansas in 1980 ("Kansas Heirs"); and two business entities managed by Chester Ellsworth: CEMPCO, Inc. and Seawatch Royalty Partners, LLC. CEMPCO and the Kansas Heirs withdrew their claims to the proceeds prior to trial, and the remaining parties—Seawatch and the California Heirs—stipulated that the California Heirs were the true heirs of the record owner. Seawatch claimed that it was entitled to the proceeds because it had obtained mineral deeds from the California Heirs. The California Heirs, however, claimed that they were entitled to the proceeds because Seawatch had obtained the mineral deeds from them through fraud or deceit.

¶5 After a seven-day bench trial, the trial court (Judge Dickinson) issued its Findings, Order, and Judgment on November 10, 2011. The trial court granted the California Heirs' claims for rescission of the mineral deeds and assignments to Seawatch, concluding that Ellsworth had obtained them on behalf of Seawatch through fraud and misrepresentation. Specifically, Ellsworth told the California Heirs that there was no oil and gas production in the Cardwell interest and that there may be no minerals to extract, even though Ellsworth (or entities he controlled) had already received over $1 million in proceeds from mineral interests in adjoining lands. Ellsworth also falsely represented to the California Heirs that they could be liable for any costs of production or accidents associated with their interests.

¶6 The trial court found that Seawatch failed to produce any credible evidence to support its assertion that Ellsworth did not make material misstatements or unjustifiably conceal material facts; the court therefore ruled that Seawatch's claims and defenses were frivolous and groundless. Pertinent here, the trial court also concluded that "Seawatch was at all material times an alter ego of Ellsworth," thus piercing the corporate veil and rendering Seawatch and Ellsworth jointly and severally liable for attorneys' fees incurred by XTO and the California Heirs in responding to Seawatch's frivolous claims and defenses.

¶7 Seawatch appealed, raising several arguments. During this first appeal, Seawatch argued, among other things, that the trial court's order holding Ellsworth individually liable for attorneys' fees must be vacated because the court did not have personal jurisdiction over Ellsworth. The court of appeals affirmed the judgment against Seawatch in a unanimous, unpublished decision, but did not address the argument regarding Ellsworth because the trial court had not yet entered final judgment on attorneys' fees. We denied certiorari review. XTO Energy, Inc. v. Seawatch Royalty Partners LLC, Nos. 11CA2388 & 12CA1159, 2013 WL 836040 (Colo. App. March 7, 2013), cert. denied, No. 13SC453, 2014 WL 620402 (Feb. 18, 2014).

¶8 While that appeal was pending, XTO and the California Heirs filed motions seek-

ing attorneys' fees and costs from Seawatch and Ellsworth. XTO and the California Heirs also filed a joint motion to join Ellsworth to the post-judgment proceedings pursuant to C.R.C.P. 21. The trial court granted the motion to join Ellsworth as a party "as authorized by C.R.C.P. 21 and City of Aurora v. Colorado State Engineer, 105 P.3d 595 (Colo. 2005)." After unsuccessful attempts to serve Ellsworth personally, XTO and the California Heirs moved for an order authorizing substituted service, which the trial court granted.

¶9 In 2013, Ellsworth, making what he called a "limited appearance," filed numerous objections and motions in which he argued that the court lacked personal jurisdiction over him and that substituted service had been improper.

¶10 In an order dated April 10, 2014, the trial court denied several pending motions, including Ellsworth's motion to dismiss for lack of personal jurisdiction. Judge Herringer, who presided over the case following Judge Dickinson's retirement, held that Judge Dickinson's corporate veil-piercing findings in his November 10, 2011 ruling were "law of the case." Judge Herringer therefore incorporated the earlier findings into the April 2014 order—specifically, that "Seawatch was at all material times an alter ego of Ellsworth"; that Ellsworth, as Seawatch's agent, "engaged in civil conspiracy" and "made material omission[s]"; and that Ellsworth's statements "constitute[d] fraud." The court articulated several additional findings relevant to whether piercing the corporate veil was necessary to achieve an equitable result. The court found, for example, that Seawatch's sole business function was to acquire the mineral deeds from the California Heirs for Ellsworth's benefit; that Seawatch had no business dealings outside the facts that gave rise to this litigation and was controlled entirely by Ellsworth; that Seawatch was apparently insolvent and had no assets, such that limiting liability to Seawatch would foreclose any meaningful opportunity for injured parties to recover for conduct for which Ellsworth was responsible; and that there was no indication that Seawatch's litigation strategy was controlled by anyone other than Ellsworth.

¶11 Ultimately, the court held that Ellsworth was liable for attorneys' fees after concluding that "[t]he only respect in which Ellsworth has treated Seawatch as a corporate entity, independent of him personally, is as a barrier to his personal liability." As a result, "[t]o the extent that Seawatch advanced frivolous argument and made groundless claims," the court ruled, "Ellsworth is the person who should ultimately be held responsible for that conduct."

¶12 About a year later, in an April 8, 2015 order, the trial court awarded fees and costs to XTO and the California Heirs under section 13-17-102, C.R.S. (2017), holding Ellsworth and Seawatch jointly and severally liable. The court instructed XTO and the California Heirs to prepare proposed judgments consistent with its order. Notice of the proposed final judgments was served on Ellsworth. Ellsworth did not file any objections. The court entered separate judgments for XTO and the California Heirs in May 2015.

¶13 Ellsworth appealed pro se, arguing, in relevant part, that when Judge Dickinson initially determined that Seawatch was an alter ego of Ellsworth, he had not been made a party to the case, and therefore, to hold him jointly and severally liable for attorneys' fees violated his right to due process. In a unanimous, unpublished opinion, the court of appeals agreed with Ellsworth and vacated the attorneys' fee judgment with respect to him. XTO Energy, Inc. v. Ellsworth, No. 15CA1114, 2016 WL 4498512 (Colo. App. Aug. 25, 2016).

¶14 Despite his victory in the court of appeals, Ellsworth filed a petition for a writ of certiorari with this court, seeking "relief of manifest injustice to include $200,000,000 in exemplary damages pursuant to § 13-17-101 [C.R.S. (2017) ] to punish the trial court's and Respondent's acts of frivolous, groundless and vexatious litigation in [the underlying cases] and the appellate courts [sic] acts of applying an incorrect standard of review and failure to order as adjudicated."

¶15 XTO filed an opposition to Ellsworth's petition, and the California Heirs filed a cross-petition for certiorari review, arguing that Ellsworth had been properly joined in

the litigation under this court's decision in City of Aurora ex rel. Utility Enterprise v. Colo. State Engineer, 105 P.3d 595 (Colo. 2005). Ellsworth subsequently filed several documents on behalf of Seawatch and CEMPCO, which this court struck under section 13-1-127(2), C.R.S. (2017). Finally, Ellsworth filed a "Motion to Declare ... C.R.S. § 13-1-127 ... Unconstitutional," which this court denied.

¶16 Ultimately, we denied Ellsworth's petition for a writ of certiorari, but granted the California Heirs' cross-petition to review the court of appeals' ruling on whether Ellsworth was properly joined in the case.[1]

## II. Analysis

### A. Piercing the Corporate Veil

¶17 We address first the merits of the trial court's decision to pierce the corporate veil and hold Ellsworth individually liable for Seawatch's litigation conduct. "Piercing the corporate veil involves a mixed question of law and fact." Lester v. Career Bldg. Acad., 2014 COA 88, ¶ 42, 338 P.3d 1054, 1062. Accordingly, "[w]e defer to the trial court's findings of fact if they are supported by the record, but review the trial court's legal conclusions de novo." See People v. Marquardt, 2016 CO 4, ¶ 8, 364 P.3d 499, 502.

¶18 A duly formed corporation is a legal entity distinct from its shareholders. Connolly v. Englewood Post No. 322 Veterans of Foreign Wars of the United States, Inc. (In re Phillips), 139 P.3d 639, 643 (Colo. 2006). This separate status normally insulates a corporation's shareholders from personal liability for the debts of the cor-

poration. Indeed, such "[i]nsulation from individual liability is an inherent purpose of incorporation; only extraordinary circumstances justify disregarding the corporate entity to impose personal liability." Leonard v. McMorris, 63 P.3d 323, 330 (Colo. 2003).

¶19 However, in certain circumstances, a court will "pierce the veil of corporate entity" to expose the individuals "hiding behind" it. I.M. Wormser, Piercing the Veil of Corporate Entity, 12 Colum. L. Rev. 496, 515, 497 (1912); Phillips, 139 P.3d at 644. For instance, a shareholder may be individually liable for the corporation's actions "when the corporation is merely the alter ego of the shareholder, and the corporate structure is used to perpetuate a wrong." Phillips, 139 P.3d at 644 (citation omitted). "In such extraordinary circumstances, the courts may ignore the independent existence of the business entity and pierce the corporate veil to achieve an equitable result." Id.; see also Griffith v. SSC Pueblo Belmont Operating Co. LLC, 2016 CO 60M, 381 P.3d 308, 313 ("The case law governing corporate veil-piercing applies to disregarding the LLC form as well.")

¶20 A corporation is the alter ego of its shareholder or shareholders when it is a "mere instrumentality for the transaction of the shareholders' own affairs, and there is such unity of interest in ownership that the separate personalities of the corporation and the owners no longer exist." Id. (quoting Krystkowiak v. W.O. Brisben Co., 90 P.3d 859, 867 n.7 (Colo. 2004)). To determine whether a corporation is an alter ego, a court should consider a number of factors, including whether "(1) the corporation is operated

---

1. We granted certiorari review of the following issues:
   1. Whether the petitioner was properly joined in the sanctions proceedings pursuant to City of Aurora ex rel. Utility Enterprise v. Colorado State Engineer, 105 P.3d 595, 621–24 (Colo. 2005).
   2. Whether piercing an entity's corporate veil is a form of vicarious liability supporting joinder pursuant to City of Aurora ex rel. Utility Enterprise v. Colorado State Engineer, 105 P.3d 595 (Colo. 2005).
   3. Whether service of a summons and an opportunity to be heard before entry of the

sanctions judgments afforded the petitioner due process.

The California Heirs filed their opening brief on July 3, 2017. Pursuant to our May 22 scheduling order, Ellsworth had until August 7 to file an answer brief. On August 23, having not received an answer from Ellsworth, we ordered him to notify the court by August 30 whether he intended to file an answer brief, warning that if he did not comply, we would presume that he did not intend to file an answer brief, and the case would proceed. Ellsworth did not thereafter file any response.

as a distinct business entity, (2) funds and assets are commingled, (3) adequate corporate records are maintained, (4) the nature and form of the entity's ownership and control facilitate misuse by an insider, (5) the business is thinly capitalized, (6) the corporation is used as a 'mere shell,' (7) shareholders disregard legal formalities, and (8) corporate funds or assets are used for noncorporate purposes." Id. As we explained in Phillips, "[t]hese factors reflect the underlying principle that the court should only pierce when the corporate form has been abused." Id.

¶21 Next, if the corporation is found to be merely the alter ego of a shareholder, the court must consider "whether justice requires recognizing the substance of the relationship between the shareholder and corporation over the form because the corporate fiction was used to perpetrate a fraud or defeat a rightful claim." Id. (quotation marks omitted). "Only when the corporate form was used to shield a dominant shareholder's improprieties may the veil be pierced." Id.

¶22 Finally, "the court must evaluate whether an equitable result will be achieved by disregarding the corporate form and holding the shareholder personally liable for the acts of the business entity." Id. "Achieving an equitable result is the paramount goal of traditional piercing of the corporate veil." Id.

¶23 A claimant seeking to pierce the corporate veil must make a clear and convincing showing that each of the foregoing factors has been satisfied. Id. If a claimant satisfies this burden and the corporate veil is pierced, the court may ignore the independent existence of the corporate entity and hold the shareholder liable for the corporation's actions. See id.

¶24 Here, the trial court held that Seawatch "was at all material times" the alter ego of Ellsworth. In its November 10, 2011 order, the trial court adopted XTO's proposed findings of fact and conclusions of law, as well as portions of the California Heirs' post-trial briefing. Specifically, the trial court found that Ellsworth was the sole managing partner of Seawatch, which he owned with his wife and two adult children; Ellsworth's payments to the California Heirs for the mineral deeds were made from Ellsworth's personal checking account or were cash; Seawatch did not have its own checking account, its own cash, or any loan agreements with Ellsworth; Seawatch did not own other property, had never received any income, and did not file tax returns; and Ellsworth used these alter ego entities to perpetuate a wrong.

¶25 Subsequently, after Judge Herringer took over the case for Judge Dickinson, the trial court incorporated these findings as law of the case in its April 10, 2014 order. In that order, the trial court also revisited the third requirement for piercing the corporate veil—i.e., whether piercing the veil is necessary to achieve an equitable result. On that point, the court found that "Seawatch was used by Ellsworth as an instrumentality for committing fraud" and that Seawatch's "sole business function was to acquire mineral deeds from the California Heirs for the benefit of Ellsworth." Indeed, according to the trial court, "Seawatch had no business dealings outside the facts that give rise to this litigation and it was entirely controlled by Ellsworth." Moreover, the court found, "Seawatch is apparently insolvent and has no assets, not even its own checking account" and "when Ellsworth was purportedly conducting business on behalf of Seawatch, he used his personal checking account for transactions made by Seawatch." Additionally, "there [was] no indication that Seawatch's litigation strategy was controlled or dictated by anyone other than Ellsworth."

¶26 Thus, the court reasoned, "if liability was limited to Seawatch, it would foreclose any meaningful opportunity for the injured parties to recover for conduct [for] which Ellsworth is responsible." Because "[t]he record is devoid of any meaningful evidence that Seawatch was operated as a separate corporate entity apart from Ellsworth," and "[t]he only respect in which Ellsworth has treated Seawatch as a corporate entity, independent of him personally, is as a barrier to his personal liability," the court concluded, holding Ellsworth "liable for the actions of Seawatch is required to achieve fairness and reach a just result."

¶27 As noted above, we "defer to the trial court's findings of fact if they are supported by the record." Marquardt, ¶ 8, 364 P.3d at 502. Here, the trial court's findings are amply supported by the record. During the 2011 bench trial related to the mineral deeds, Ellsworth testified that he owned Seawatch with his wife and two children. Ellsworth testified that he had been the sole manager of Seawatch since its inception in 2007 and that he makes all the decisions for Seawatch. Ellsworth further testified that Seawatch did not have a checking account when he obtained the mineral deeds from the California Heirs; indeed, at least one California Heir testified that Ellsworth paid for the mineral deeds with a personal check. Ellsworth also testified that Seawatch had not received any income and had not filed tax returns.

¶28 Based on the above factual findings, and reviewing the trial court's legal conclusion de novo, id., we conclude that the trial court did not err by piercing the corporate veil.

### B. Joinder and Due Process

¶29 The court of appeals vacated the judgment against Ellsworth, holding that the trial court lacked personal jurisdiction over him because Ellsworth had not yet been joined as a party (and therefore had no notice or opportunity to contest personal liability) when the trial court entered the November 2011 order holding him individually liable. XTO Energy, slip op. at 1, 5–6. Consequently, the court of appeals reasoned, the initial order was void with respect to Ellsworth, and all subsequent orders and judgments based on the initial order were void as well. Id. at 14. The court of appeals rejected XTO's argument that joinder "cured" this jurisdictional defect, because (1) joinder was improper; and (2) Ellsworth did not have a chance, after the joinder motion was filed, to contest the trial court's alter ego findings or its imposition of joint and several liability. Id. at 10–14.

¶30 It is true that a person is not bound by a judgment if he was not "designated as a party or . . . made a party by service of process." Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 110, 89 S.Ct.

1562, 23 L.Ed.2d 129 (1969). But here, we conclude that Ellsworth was a party to the post-judgment proceedings. The court of appeals' conclusion that Ellsworth was not properly joined because there was no pleaded "claim for relief" against Ellsworth, XTO Energy, slip op. at 10–12, is contrary to our decision in City of Aurora. There, after the trial court entered its order of dismissal following an eight-week trial, the prevailing party sought attorneys' fees and costs under section 13-17-102(4), and moved to join Aurora solely "for purposes of collecting attorney fees and costs." City of Aurora, 105 P.3d at 605. The court granted joinder, and we affirmed.

¶31 As we explained, under the Colorado Rules of Civil Procedure, "[p]arties may be dropped or added by order of the court on motion of any party . . . at any stage of the action and on such terms as are just." Id. at 623 (emphasis in original) (quoting C.R.C.P. 21). Rules 20 and 21, which should be "liberally construed," specifically "authorize joinder in situations where one party seeks to join a person who may be liable for the same debt or conduct that is already before the court." Id. These rules "indicate clearly a general policy to disregard narrow technicalities and to bring about the final determination of justiciable controversies without undue delay." Id. (quoting Swan v. Zwahlen, 131 Colo. 184, 280 P.2d 439, 441 (1955)). Thus, we held, joinder of Aurora was not an abuse of discretion, even though the court had already entered judgment on the merits, "[b]ecause C.R.C.P. 20 allows joinder at any stage of the proceedings and because C.R.C.P. 21 anticipates joinder where there are joint liabilities, as well as common questions of law and fact," and Aurora "was potentially liable for conduct that was already before the court." Id.

¶32 Nor were XTO and the California Heirs required to amend their pleadings to add a "claim for relief" against Ellsworth, or file additional pleadings to the same effect, to join Ellsworth. Such a rule would be antithetical to the policy behind Rules 20 and 21, and would make little sense in situations where, like here and in City of Aurora, the

trial court has already entered judgment on the underlying dispute. Additionally, in light of the unique factual circumstances of this case, any failure to amend the complaint to add Ellsworth as a party to the post-judgment sanctions proceedings would be, at most, harmless error. "The court at every stage of the proceeding must disregard all errors and defects that do not affect any party's substantial rights." C.R.C.P. 61. "[A]n error affects a substantial right only if it can be said with fair assurance that the error substantially influenced the outcome of the case or impaired the basic fairness of the trial itself." Laura A. Newman, LLC v. Roberts, 2016 CO 9, ¶ 24, 365 P.3d 972, 978 (quotation marks omitted). By the time Ellsworth was joined as a party, he had already been heavily involved with the case for several years as Seawatch's sole managing member. Indeed, he spent much of the trial at counsel's table and also testified. He was then properly served with the joinder motion and summons. On this record, Ellsworth cannot establish that any error regarding amending the complaint substantially influenced the outcome of the case or impaired the basic fairness of the trial.

¶33 Furthermore, contrary to the court of appeals' assertion, Ellsworth had an opportunity to contest his individual liability once he was joined as a party. The trial court found that Seawatch was Ellsworth's alter ego in November 2011 and that, accordingly, Ellsworth would be jointly and severally liable for any award of attorneys' fees. In December 2011, XTO and the California Heirs moved for judgment on attorneys' fees and to join Ellsworth as a party to the post-judgment proceedings. The court granted the joinder motion in August 2012, and Ellsworth was served via substituted service in January 2013. The court did not enter final judgment awarding attorneys' fees against Ellsworth, however, until May 2015. During the three years after Ellsworth was joined as a party and before the entry of final judgment, Ellsworth had ample opportunity to challenge the alter ego findings.

¶34 In fact, Ellsworth did offer arguments, however unartful, regarding the propriety of piercing the corporate veil. In 2013, Ellsworth, making what he called a "limited appearance," argued that the court lacked personal jurisdiction over him and that the substituted service had been improper. In his motion to dismiss, Ellsworth, represented by the same attorney who represented Seawatch, "object[ed] to the validity of the Summons served by substitute service . . . and also on the basis that the Court lacks personal jurisdiction over Ellsworth." Ellsworth's motion to dismiss went on to address "the elements of 'piercing the corporate veil,'" arguing that the trial court's order holding Ellsworth individually liable "contains no record that [the relevant] elements were evaluated" and that the record was "also completely void of the analysis showing all elements satisfied a standard of 'clear and convincing' proof." (citing Phillips, 139 P.3d at 644).

¶35 In a subsequent filing, Ellsworth argued against piercing the corporate veil under a section entitled "CEMPCO AND SEAWATCH ARE NOT AGENTS OR ALTER EGOS OF ELLSWORTH." Ellsworth asserted that the "alter-ego theory of the trial court cannot be applied here" for various reasons, including that "the failure of a limited liability company to observe the formalities or requirements relating to the management of its business and affairs is not in itself a ground for imposing personal liability on the members for liabilities of the limited liability company." (quoting § 7-80-107, C.R.S. (2017)). Ellsworth went on to address the "[c]ommon law Alter Ego elements," reiterating that the trial court made, in his view, insufficient findings on the record. Based on this record, we disagree with the court of appeals that "Ellsworth did not have a chance, after the joinder motion was filed, to contest the court's alter ego finding or its imposition of joint and several liability." XTO Energy, slip op. at 13.

¶36 The court of appeals' focus on the 2013 hearing on the motions for attorneys' fees was misplaced. That hearing, the court of appeals asserted, was limited to "whether XTO could recover fees it had incurred by participating in the litigation more actively than a traditional interpleader plaintiff" and thus "did not provide any kind of belated

opportunity for Ellsworth to challenge the court's alter ego finding." Id. However, this conclusion is belied by the transcripts of the hearing; it also discounts the time after joinder before the hearing, and the years after the hearing but before final judgment entered.

¶37 It is true that Judge Herringer ruled that Judge Dickinson's findings were "law of the case." But that doctrine did not prevent Ellsworth from challenging those findings. Generally speaking, the law of the case doctrine "provides that prior relevant rulings made in the same case are to be followed unless such application would result in error or unless the ruling is no longer sound due to changed conditions." People v. Dunlap, 975 P.2d 723, 758 (Colo. 1999). However, the law of the case doctrine recognizes that "a trial court is not inexorably bound by its own precedents." Brodeur v. Am. Home Assur. Co., 169 P.3d 139, 149 (Colo. 2007). That is, the law of the case doctrine does not "prevent[ ] a trial court from clarifying or even revisiting its prior rulings." In re Bass, 142 P.3d 1259, 1263 (Colo. 2006). To the contrary, "[a] trial court has discretion to apply the law of the case doctrine to its own prior rulings." San Antonio, Los Pinos & Conejos River Acequia Pres. Ass'n v. Special Improvement Dist. No. 1, 2015 CO 52, ¶ 31, 351 P.3d 1112, 1120. Thus, Judge Herringer was not bound by Judge Dickinson's findings. And indeed, here, before addressing the merits of the trial court's decision to pierce the corporate veil, Ellsworth argued that "the trial court always possesses the power to correct or re-direct a prior Order and . . . is 'not' to be trapped by the 'law of the case' doctrine while its case remains pending." (emphasis in original) (citing Bass, 142 P.3d at 1263).

¶38 Ellsworth also could have filed a Rule 59(e) motion to alter or amend the judgment after the trial court entered judgment against him in May 2015. He did not do so. Nor did he move under Rule 60(b) to ask the court to relieve him from the final judgment. See Link v. Wabash R.R. Co., 370 U.S. 626, 632, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962) (recognizing that "the availability of a corrective remedy such as is provided by Federal Rule of Civil Procedure 60(b)—which authorizes the reopening of cases in which final orders have been inadvisedly entered—renders the lack of prior notice of less consequence."); see also Am. Sur. Co. v. Baldwin, 287 U.S. 156, 168, 53 S.Ct. 98, 77 L.Ed. 231 (1932) ("Due process requires that there be an opportunity to present every available defense; but it need not be before the entry of judgment."). In sum, we disagree with the court of appeals that Ellsworth lacked notice and opportunity to contest his liability.

## III. Conclusion

¶39 We conclude that the trial court properly pierced the corporate veil to hold Ellsworth individually liable for Seawatch's, his alter ego, frivolous claims and defenses. Additionally, we hold that Ellsworth, who was properly joined to the post-judgment proceedings, had notice and opportunity to contest his individual liability. We therefore reverse the court of appeals and remand with instructions to reinstate the judgment awarding attorneys' fees and costs.